# Charleston,

CONRAD *v.* COUNTY OF LEWIS.

Decided May 2, 1877.

(Absent, HAYMOND, JUDGE.)

1877.
January Term.

1. A county court has no right to discontinue any portion of a turnpike which had been turned over to the county by the state.

2. If a public road, or any part thereof, is discontinued by the county court, without giving the public notice required by law, the order of discontinuance is a mere police order, which any citizen of the county has a right to move to set aside at a future term; and if the county court permits such motion to be made, as it should do, the party making such motion has a right, by *supersedeas*, to have such action of the county court reviewed by the circuit court.

3. A petition to alter a county road is, in effect, a petition to establish a new road, and also to discontinue another; and before it can be finally acted upon, notice must not only be given to the parties whose lands are proposed to be taken or injured, but also three weeks' public notice should be given, as required by the statute, in discontinuing a road.

The county court, of the county of Lewis, having refused to revoke a former order made by it, establishing a county road, a *supersedeas* was prayed for and granted by the circuit court of said county, to said order. On the 7th day of September, 1875, the said circuit court dismissed said *supersedeas*, as improvidently awarded, to which action of said circuit court a *supersedeas* was granted by this Court, upon the petition of George Conrad and others.

GREEN, PRESIDENT, who delivered the opinion of the Court, gives a full statement of the case.

The Hon. John Brannon, Judge of the 6th judicial circuit, rendered the judgment below.

*J. M. Bennett,* for plaintiffs in error.

*Henry Brannon,* for the county of Lewis.

GREEN, PRESIDENT, delivered the opinion of the Court:

On the 2d day of December, 1873, the county court of Lewis county, on motion of Hudson Jeffries, appointed three persons as viewers, " to view and mark a way for an alteration in the road leading up West Fork river," between certain described points. Only two of the viewers acted; they reported in favor of the alteration, and stated in their report that the new road to be established ran only through the lands of Joseph Hall. During the same term of the court, on the 6th day of December, 1873, said Hall, waiving a summons, and consenting to such alteration, the court ordered that said alteration be established as a public road, and further ordered that so much of said road leading up West Fork river as heretofore existing, and lying between the terminal points of said alteration, be discontinued. Seven months thereafter, some fifty-one citizens of the county, including one Joseph Mathews, a stockholder in the Weston and Gawley Bridge Turnpike Company, filed a petition to revoke the order which discontinued said road, and on their motion to revoke said order, they proved that the road discontinued was a part of the Weston and Gawley turnpike, which had been made by said company and operated as a turnpike till the breaking out of the war, but that since then said company had taken no control over the road. But that in 1866, Lewis county had taken charge of so much of the road as laid in that county, the state owning three-fifths of the stock of said company, and all its stock in turnpike companies

having, by law, been transferred to the counties in which turnpikes were located. This turnpike ran through several counties. The court refused to revoke any part of its order of December 6, 1873, but allowed said turnpike road to be closed and discontinued to the extent mentioned in said order, and directed a fence to be thrown across the same to that extent. To which action of the court the petitioners excepted, the evidence submitted being set forth in their bill of exceptions. On the application of these petitioners, a *supersedeas* was granted to this order of December 6, 1873, by the Judge of the circuit court of Lewis county, and on the 7th day of September, 1875, the circuit court of Lewis dismissed. this *supersedeas* as improvidently awarded, and ordered that the appellee recover of the appellants their costs in that court expended. The court made its opinion a part of this order. This opinion is as follows:

" It appears from the record of the proceedings in the matter complained of, that the alteration of the road in the proceeding mentioned, and the discontinuance of so much of the old road as was so altered, was made final by an order to be found in the proceedings of the court, entered on the 6th of December, 1873, and that said final order remained unreversed and in full force ; that on the 6th of June, 1874, the said Conrad and others petitioned the said court to revoke so much of the said order as operated a discontinuance of the part of the old road so altered. If the proceedings of the county court, which were concluded by the order of December, 1873, were irregular, unauthorized and erroneous, the said final order could only be reversed on the petition of some party to the proceedings. The petitioners were not parties to said proceedings. If they were not parties, they should not be entertained to reverse the said final order of December, 1873. Certainly citizens, not parties to such proceedings, should not be entertained in an appellate court because they may think themselves interested. *Wingfield v. Crenshaw*, 3 Hen. and Munf., p. 245, 255,

257 : 2 Tuck., side page 355, &c., after the final order in December, 1873, the court is of opinion that the appellants would not by the rejection of their petition presented in June, 1874, and rejected, make themselves parties so as to be entertained here, and I see no error of the county court in refusing to entertain their petition. If the action of the county court in establishing the alteration and discontinuance referred to was unlawful and unauthorized, the petitioners were not without the means of redress. The court is of opinion the writ of *supersedeas* should be quashed as improvidently granted, and these proceedings dismissed."

And upon the petition of said petitioners a *supersedeas* was awarded to this judgment of the circuit court of Lewis county by this Court.

The law then provided and still provides, two modes of proceeding in reference to roads. If a road is to be discontinued, the parties file their petition therefor, but before it can be acted upon, notice of such petition must, three weeks at least, before it is acted upon, be posted at the front door of the court house and at three public places in every district in which any part of the road may be. Code of W. Va., ch. 43, §30; acts of 1872–73, ch. 194, §30. If a road is to be established, the parties file their petition, and take certain steps before said petition is finally acted upon. The proprietors and tenants of the property which would have to be taken or injured, if the road were established, must be summoned, to show cause against it, but no public notice is given, as is required when a road is to be discontinued. Code of W. Va., ch. 43, §35 and 36; acts of 1872–73, §35 and 36. If a road is to be altered, a petition therefor, is filed, but as such alteration necessarily implies the establishment of one road and the discontinuance of another, it is obvious that the proprietors and tenants of the property to be taken or injured by the establishment of the new road must be summoned, and likewise the three weeks' public notice aforesaid must be given, for without this no road

1877.
January Term.

Conrad
v.
County of Lewis

can be discontinued. The two proceedings, establishing one road and discontinuing another, constituting together what is called an altering of a road, are, for convenience, heard together on one petition, but it is obvious that the necessary steps to prepare each of these cases should be taken before the court acts upon them. The public has a right to be notified before an established road, which the public has a right to use, can be discontinued; and the proprietors have a right to be notified before their lands are taken to establish a new road. Before, therefore, a road can be altered, both the public and the land-holders affected by the establishment of the new road must be notified. It is obvious that it makes no difference whether the whole, or a part, of a public road is to be discontinued; in either case, the public has a right to the three weeks' notice aforesaid. The record shows, affirmatively; that no such public notice was given in this case, for the court acted upon and discontinued the road within four days after the proceedings commenced. There would have been no objection to this hasty action if the order had been confined to the opening of the new road, for the only tenant, through whose land the new road passed, appeared, and waiving the summons, consented to the establishment of the new road. And if this had been all the action of the court, it would have been unexceptionable, for in the establishment of a road the public are not required to be notified. The public, in such case, is not called upon to surrender any of its existing rights, but, on the contrary, are acquiring new rights, and the law has wisely thought that the county court could be safely trusted not to pay too much for these new rights acquired by the public. If this public notice of three weeks had been given, any citizen of the county could, in that time, have appeared and made himself a party to the proceeding and objected to the discontinuance of the road, though no citizen would have had a right to have appeared and objected to the

establishment of the new road. *The Board of Sapervisors of Culpepper County v. Gorrel.* If the proprietor of the land, Joseph Hall, had not been summoned, or had not waived the summons by appearance, he would have had a right at a subsequent term to have appeared, and moved the court to set aside the order establishing a road through his land without his consent, and without his having been given the notice required. *Yeager v. Carpenter et al.,* 8 Leigh, 854. In that case, Judge Tucker in speaking of such a case, says: "In a case of this kind, where an illegal order is made, which is injurious to one who is no party to the record, and who can not, therefore, sue out a *supersedeas*, or writ of error, or obtain an appeal, the question presents itself, how is the injured party to be redressed?" This he answers thus: "there being no party, there is no *lis*, and the order establishing the road, is certainly not the *judgment* of the court, but a mere police order, which may be set aside, upon motion, at a subsequent term, and if the motion to rescind were refused, the party might doubtless have his redress; whether by *supersedeas* or *mandamus* it might be premature to say."

So in the case before us, the order of the county court made on the 6th day of December, 1873, so far as it discontinued a portion of a road without any notice to the public, is to be regarded as "a mere police order which might be set aside, upon motion at a subsequent term." And as any citizen, had the proper public notice been given, could have appeared in answer to such public notice, and resisted the discontinuance of the road, it follows that no such notice having been given, any citizen of the county had a right to appear at a subsequent term and move the court to set aside so much of its order as discontinued a portion of a public road. The county court, therefore, properly permitted the petitioners, citizens of Lewis county, to appear at the May term, 1874, and make themselves parties to this proceeding, and move to set aside this order discontinuing this road

in part. The record distinctly shows that this was the action of the county court, and that the circuit judge was mistaken when, in his opinion, he says the county court refused to entertain this petition. The record shows that it was not only entertained, but all the evidence was heard by the county court, " and the court upon consideration of said petition and motion, refused to revoke any part of said order of December 6, 1873." The county court, however, erred in refusing to set aside this order, as it was obvious that it had been prematurely made without the three weeks public notice, required by the statute having been given. These petitioners then, being parties to the controversy, having been permitted properly to appear and litigate the matter on its merits in the courts below, had clearly some rights of redress for the erroneous action of the county court. This conclusion legitimately follows from the law laid down by Judge Tucker above quoted. It is even questionable whether he might not have laid down the law still more favorable to the party aggrieved. In the above quotation from his opinion, he says: "In a case of this kind where an illegal order is made which is injurious to one who is no party to the record, and who cannot, therefore, sue out a *supersedeas* or writ of error, or obtain an appeal, the question presents itself, how is the injured party to be redressed?" It would seem from this that Judge Tucker thought if a party had not been served with the process, he would not be such party to the record as could obtain a *supersedeas* or writ of error or obtain an appeal. This, however, is at least very questionable, for Powell on Appellate Proceedings, ch. 6, §6, p. 264 and 268, cited approvingly by President Haymond, in *Monroe et al v. Bartlett et al,* 6 W. Va., 443, says: "When considering the question whether proceedings in error might or ought to be brought, it should be remembered that there are some errors so obvious and gross that they render the judgment void. But even in such case, error for the reversal of such judgment might be sustained,

1877.
January Term.

Conrad
v.
County of Lewis

and that would be the better way, as being more direct and positive. Errors of this sort are such as exist when there is a want of jurisdiction over the person of the defendant in the judgment, on the account that there had been no service of process, or the appearance of the defendant." This position of Powell seems to be sustained by *Skipwith v. Bill*, 2 Mass., R., 36, and by the reasoning of the court in *Smith v. Rice*, 11 Mass., 512. But we need not determine this question as I have shown that the petitioners here were permitted properly by the county court to appear and make themselves parties to the controversy. Had the county court refused to permit them to appear and controvert the matter on its merits some doubt might have existed as to the mode of redress. A question might then, perhaps, have been raised as to their right to a *supersedeas*. But they having been properly admitted to appear and controvert the plaintiff's claim in the county court, there would seem to be no reason if the court erred in the judgment on the merits, to their prejudice, why they should not have been permitted to obtain a *supersedeas* just as if, after proper notice, had it been given, and they had appeared, they would in such case have obtained a *supersedeas* . And though, as will be presently shown, the court had no power to discontinue the turnpike in this case, or any part thereof, even if the proper public notice had been given, yet the fact that it exceeded its jurisdiction, while it might, perhaps, render such judgment void, yet it would not prevent any party aggrieved from having it reversed in an appellate court, and the correction of such judgment by proceedings in error, is generally to be preferred. Powell on Appellate Proceedings, ch. 437, p. 119. We have thus far considered this case as if the proceedings had been to discontinue in whole or part a county road; and so far as the original proceedings, before the appearance of the petitioners, shows, such was the character of the proceedings, and if nothing more had appeared the

action of the county court, in discontinuing this road, or part of it, ought to have been reversed by the circuit court as prematurely made, before any public notice was given, as required by the statute, and the case remanded to be properly proceeded with. But as, after the appearance of the petitioners, it was made to appear that the road discontinued, in part, was a turnpike, which had been transferred to the county by the state, the circuit court should have annulled the order of the county court, and not sent the case back for further proceedings. For the record, after the appearance of these petitioners, showed that the county court, if its proceedings had been perfectly regular, had no authority to discontinue this turnpike, or any part of it. The act giving the county courts authority to discontinue roads not extending to such turnpikes, the law expressly providing that it should not "apply to any turnpike road which has been, or shall be, transferred to any county by the state." Code of W. Va., ch. 43, §30, p. 273; Acts of 1872-3, ch. 194, §30, p. 571. And as the original application was not to establish a new road simply, but to alter a road that is to establish a new road and at the same time to discontinue another, and the assent of Joseph Hall must be considered as given, not to the mere establishment of the new road, but to this alteration of, the road, including the closing of a portion of the old road or turnpike, which the court had no authority to do. The entire orders of the county court should be reversed and annulled, including that portion of the orders establishing the new road. Such establishment of it was based upon the closing of the old road, and as that cannot be done, the establishment of the new road ought not to done. The Judge of the circuit court dismissed the *supersedeas*, as appears from the opinion of the Judge, on the ground that as the petitioners were not parties to the proceedings in the county court, the same having been finally ended on the 6th day of December, 1873; and that, therefore, they had no right to have a *supersedeas*. The premises assumed are false,

as we have seen, and the conclusion is, therefore, errone- <sub>January Term.</sub><sup>1877.</sup> ous. Upon the merits of the case, the appellee's counsel <sub>Conrad</sub> insists that by various provisions of the law, turnpikes <sub>County of Lewis</sub><sup>v.</sup> turned over to the counties by the state are to be regarded as county roads. It is unnecessary to consider the extent of the authority of the county courts over such turnpikes; it is sufficient that the law has expressly forbidden their discontinuance by the county court. Counsel have argued that the rights of the turnpike company have been forfeited by non-user, and that the state had a had right to treat the charter of the turnpike as though it had been annulled; but these questions seem to me to be foreign to the case, as it is obvious that the state has not chosen to treat these turnpikes as common county roads, so far as their discontinuance is concerned. There has been considerable discussion of other questions as to whether it was necessary for the record to show that the viewers were sworn, and whether it was not the imperative duty of the viewers to state the costs of opening the new road. But from my view of the case, all these questions become immaterial, as the court, had it proceeded with unquestionable regularity, had no right to discontinue any portion of this turnpike.

The judgment of the circuit court must be reversed and annulled, and this court, proceeding to render such judgment as it ought to have done, doth reverse and annul the order of the county court made in this cause, on the 6th day of December, 1873, and on the 6th day of June, 1874, and doth dismiss the proceedings and motion of Hudson Jeffries for the alteration of said road; and doth order that the plaintiffs in error recover of the defendant in error their costs incurred in this Court, in the circuit court of Lewis, and in the county court of Lewis.

JUDGMENT REVERSED.