# CHARLESTON.

JOHNSON v. SANGER *et al.*

Decided March 30, 1901.

| 49 | 405 |
| 60 | 337 |
| 60 | 338 |
| 49 | 405 |
| 63 | 321 |

1. HUSBAND AND WIFE—*Conveyance—Trustee.*
   Under section 4, chapter 66, Code 1891, a conveyance by a wife and husband of land held by a trustee in trust for the wife is invalid, the trustee not joining in it.   (p. 407).

2. TRUST PROPERTY—*Trustee—Conveyance.*
   The clause of section. 4, chapter 66, Code 1891, requiring a trustee holding land for the use of a married woman to join her in its conveyance, has application to conveyances to a trustee vesting estate before the enactment of that clause, except those made before the constitution of 1872.   (p. 409).

3. PROPERTY—*Vested Rights—Alienation.*
   Legislation cannot devest or impair rights of property vested before such legislation, nor the right of alienation, nor any of the essential incidents to the estate in such property. (p. 411).

4. MULTIFARIOUSNESS—*Multiplicity of Suits.*
   The objection of multifariousness in a bill may be disregarded except in plain cases, where thereby the administration of justice will be furthered, and multicplicity of such avoided. (p. 411).

Appeal from Circuit Court, Fayette County.

Bill by Charles A. Johnson against Joseph Sanger and others. Decree for defendants, and plaintiff appeals.

*Affirmed.*

A. D. PRESTON, for appellant.

BROWN, JACKSON & KNIGHT and C. W. DILLON, for appellees.

BRANNON, PRESIDENT:

By deed of the 22d of April, 1868, a tract of one hundred acres of land was conveyed to Sanger as trustee "in trust for Mary Lydia Johnson, wife of Hiram Johnson, and her heirs." By deed of the 20th of March, 1874, a tract of eighteen and one-half acres adjoining was conveyed to Thurmond on the like trust. By deed dated 22d of April, 1868, Johnson and wife conveyed away three and one-half acres of the one hundred acre tract, leaving it ninety-six and one-half acres. By deed of 1st of May, 1880, Johnson and wife conveyed all minerals in said land to Harvey and Thurmond, reserving "enough coal for the ordinary domestic consumption of eight families." The trustee did not join in this deed. By deed of 29th May, 1893, Harvey and Thurmond made a coal lease of said lands to the Harvey Coal and Coke Company. By deed of 10 November, 1891, Mrs. Johnson and her husband conveyed said tracts of ninety-six and one-half and eighteen and one-half acres to Gentry, the trustee of Mrs. Johnson not joining in this deed; but by deed of 11 May, 1898, Sanger, the trustee, made a deed to Gentry's heirs ratifying the deed from Mrs. Johnson and her husband to Gentry in his life time, and conveying to the Gentry heirs the surface, and only the surface, of said land. By deed of 11 March, 1899, Mrs. Johnson and her husband conveyed to their son, Charles A. Johnson, "all their right, title and interest, both legal and equitable, in and to those two tracts."

In June, 1899, Charles A. Johnson brought this chancery suit in the circuit court of Fayette County against Sanger, who had been substituted trustee to hold for Mrs. Johnson the land so conveyed in trust for her, the heirs of Gentry, Harvey and Thurmond and the Harvey Coal and Coke Company. In his bill he claims that the deed from Johnson and wife to Gentry is void because Sanger, the trustee, did not join in it as required by chapter 109, Acts 1891, Code 1891, chapter 66, section 4. The bill sought several kinds of relief. It sought to compel Sanger,

trustee, to convey the land to the plaintiff; to require the Gentry heirs to yield possession to the plaintiff; to cancel the deed from Johnson and wife to Gentry, and the deed from Sanger, trustee, to the Gentry heirs; and to ascertain what amount of coal the plaintiff is entitled to under the reservation in the deed from Johnson and wife to Harvey and Thurmond. Upon demurrer the circuit court dismissed the bill, and Johnson appeals.

What is the effect of the deed from Mrs. Johnson and her husband to Gentry? Is it void because the trustee did not join? The conveyances to trustees for the use of Mrs. Johnson made simply passive, not active trusts, conferring only naked, dry legal title on the trustee, and conferring on Mrs. Johnson the full beneficial equitable estate in fee, with right to possession and control according to the doctrines of courts of equity, without any right in the trustees to have the possession or use or control of the property. In equity she was owner. It was separate estate in her, and under chapter 66, Code 1868, which was in force when the conveyances for her use were made, by a deed from herself and husband, she could sell and convey the land, and compell the trustee to pass the legal title to her alienee by uniting in the deed, or by separate deed, or the purchaser under a deed from her and her husband could do so. The statute just mentioned would so operate. Principles of courts of equity would so operate before that statute. I think the statute of uses would execute the use to the possession, and confer legal title upon her without a deed from the trustee; but for purposes of this case it is not necessary to say so. Such separate estate carried with it the *jus disponendi,* the full right of alienation, provided that mode or form of disposition required by statute be used. *Radford* v. *Carwile,* 13 W. Va. 572; Perry on Trusts, ss. 520, 667; 1 Bishop, Law of Married Women, ss. 852, 865, 867, 869; *Jones* v. *Tatum,* 19 Grat. 733; Hill on Trustees, 274n, 316. Indeed, as seen in Perry, s. 667, no conveyance from the trustee, in equity is necessary. It would only be necessary in actions of ejectment, if then; but as the statute executes the use to the possession, I do not think it necessary even at law. *Hopknis* v. *Ward,* 6 Munf. 38. Such was the law before the act of 1891. But that changed this law. It can have no other effect. It provides that "if property be held in trust by any person for the use of a married woman," a circuit court may, on proof of her competency to manage her property, direct the trustee to con-

vey it to her; and it further provides that while the property "remains in the hands or under the control of such trustee, no contract relating to, or conveyance of, any such property by such married woman shall be of any force to bind or affect the same, unless her trustee join therein." A change from the old law was intended; else why the statute? It is argued that to apply the statute the trustee must control and be in possession of the estate, and that it does not apply to a mere passive trust, but only to an active one. This will not do. There was no need of such an enactment in the case of an active trust, as there the wife could not convey. It was needed only where she possessed power of alienation. And besides, the clause quoted is just as broad as the opening clause, that is, it applies in any case where "if property be held in trust by any person for the use of a married woman," the court may direct a conveyance to her; but while such property remains in the trustee's hands or control, she cannot sell without his consent; that is, the converse of, or in absence of, an order of court to convey to her. She can only sell after such order of court or by joining with the trustee. It is also argued against this interpretation of the section that another section provides that where a wife and husband have made and acknowledged a deed, it shall pass all title of every nature the wife may have; but we must read both sections, give each an effect, and doing so we find the section in question an exception from the generality of section 4, chapter 73, Code 1891, because it directs a special mode of conveyance where the estate is held by a trustee for a married woman. But this does not end the question. When Mrs. Johnson acquired the estate, by the law above stated then in force, she had a fee estate, and as part of it, as incident to it, the power of disposition by deed from herself and husband. *Radford* v. *Carwile,* 13 W. Va. 572; *Hughes* v. *Hamilton,* 19 *Id.* 366. "One of the most important incidents to a fee simple estate is the right of free and unlimited alienation." 1 Washburn on Real Prop. 78. The deeds conferring the estate on Mrs. Johnson contained no restriction on alienation. Thus, she had a vested estate with right to convey, prior to the act of 14th of March, 1891, Code 1891, chapter 66, section 4. This power of disposal was an essential part of the estate, adhering to the *jus proprietalis;* there can scarcely be a more important element in title. 1 Bish. Law Marr. Women, ss. 852, 865, 867.

The act of 1891, which first introduced this restraining clause
upon the power of alienation, is evidently applicable to all es-
tates so held, whether vested before or after the enactment of
that clause. It thus impairs the right of the wife to dispose of
her land, a right vested in her by law in force when the estate
was created, because it added a new and indispensable requisite
to the right of disposition, consent of the trustee, thus fettering
that right materially, in many instances utterly frustrating it.
The clause makes her hold her land subject to the absolute yea or
nay of the trustee, so far as concerns its sale. This would make
the clause repugnant to the State Constitution of 1863, and the
fourteenth amendment forbidding the states to deprive one of
property without due process of law. A vested right of prop-
erty cannot be taken away, or its usefulness impaired by legisla-
tion. *Wyatt* v. *Smith*, 25 W. Va. 813; 1 Bish. L. Marr. Women,
s. 677; 2 *Id.* s. 32; Wade, Retro. Law, s. 157; Sedgwick, Stat. &
Con. L. 643. We must consider the passage in 10 Am. & Eng.
Ency. L. (2 Ed.) 299, as stating sound law: "It is also consid-
ered that a person may be 'deprived' of his property without any
physical taking, and that the Constitution is violated by any law
which destroys the value of the property, takes away any of its
essential attributes, or deprives the owner of the lawful use of
it." To take away power of alienation destroys an element of
title and an important mode of use of property. When Mrs.
Johnson in 1868 acquired the tract of one hundred acres of land
it became a property thus protected, and I think the act of 1891
could not restrict her power of alienation, and that the deed of
her husband and herself as to this tract conferred on Gentry good
title. Though that deed was made after the act of 1891, yet as
she held her estate with full power of alienation, Gentry by that
deed got all right she had. The Constitution of 1872 could not
retroact and affect title to the one hundred acre tract vested as
property under the Constitution of 1863; for a state can no more
by its constitution than by its statute violate the fourteenth
amendment. *Neal* v. *Delaware*, 103 U. S. 370. But how as to
the tract of eighteen and one-half acres acquired by Mrs. John-
son in 1874? At that date section 49, Art. VI of the Constitu-
tion of 1872 was in force giving power to the legislature to "pass
such laws as may be necessary to protect the property of married
women from the debts, liabilities and control of their husbands."
I regard the provision of the act of 1891 requiring the consent of

the trustee in the conveyance of a married woman's property as vindicated by this section of the Constitution, as the necessity of the trustee's consent would be a hindrance in the, way of improvident acts of the wife, instigated by the undue influence of the husband, charging it with his debts, or selling it to answer his ends.    Mrs. Johnson took this eighteen and one-half acre tract subject to the power in the legislature, under the State Constitution then in force to hamper her power of sale; her property right vested subject to it by the State Constitution, and thus the act of 1891 violated neither the State nor Federal Constitution.    There was no such provision in the Constitution of 1863, in operation when Mrs. Johnson acquired the tract of one hundred acres.    Hence, Mrs. Johnson's deed to Gentry was not good as to the tract of eighteen and one-half acres.    But what is the effect of the deed to Gentry's heirs from the trustee?    Chapter 3, Acts of 1893, re-enacting chapter 66 of the Code, repealed this clause of section 4 requiring the consent of the trustee by omitting it; but that has nothing to do with this deed.    This deed is a ratification of the deed of Mrs. Johnson and her husband to Gentry.    What matters it, in common sense, whether the trustee express his consent by signature to the deed of husband and wife or by a separate deed?    His consent is what the statute requires.    The statute requires the woman's consent. That is expressed in her deed.    The statute also requires the trustee's consent.    That is expressed by his deed.    Her deed has given him warrant to make his deed.    It is not a joinder in the same deed by the woman and trustee that the statute means.    It means a joinder in conveyance, in transfer, a concurrence of consent in the act of conveyance..    A deed is not strictly the conveyance.    It is only evidence of a conveyance, which is a union of minds.    Hill on Trustees, 278, 317.    By the woman's deed she gives consent, which she cannot withdraw, and on which the trustee may act.    Therefore, Gentry's heirs have good title to the surface of both tracts, the plaintiff none to the surface of either tract.    As to the conveyance of the minerals by the deed from Johnson and wife to Harvey and Thurmond.

It passed good title to the minerals of the ninety-six and one-half acres, on principles above stated.    It passed good title also to the minerals in the eighteen and one-half acre tract because made prior to the act of 1891.    When that deed was made Mrs. Johnson had the power of disposal, and exercised it, and vested

an estate in Harvey and Thurmond, and I do not think the act of 1891 would be construed to retroact, or could by the Constitution retroact, to destroy that estate. Statutes are almost invariably construed to have effect on future, not past transactions. *Burns* v. *Hays,* 44 W. Va. 503; *Stewart* v. *Vandervort,* 34 *Id.* 524. No doubt the act applies to all estates held by married women vested after the Constitution of 1872, so far that conveyances after that act must conform to it, but not to a conveyance by the woman before that act. So, the plaintiff has no right in either tract except the reservation of coal for eight families in the deed to Harvey and Thurmond. As to this on the merits I see no ground of decree in this case. Has it ever been denied? Is there equity jurisdiction to demand or ascertain it? I do not think so. Its refusal would be ground of law action perhaps. But it has not been denied. You cannot ascertain its value in money, and decree payment, as it is payable in coal in kind. How is it to be decreed in this suit? Anyhow, no ground to decree it is shown.

It is said the bill is multifarious, because the Gentry heirs have no interest in the matters litigated between the plaintiff and Harvey and Thurmond and the Coal Company, and that Harvey and Thurmond and the coal company have no interest in the matter litigated between the plaintiff and the Gentry heirs. This would seem so. This matter of multifariousness is one of perplexity to me in the case, as also other points involved. It seems difficult to say that the matters of the suit, as they relate to the two sets of defendants, have a connection, and yet the rights of the parties are to estates in the same land—surface and mineral estates, and their rights should be settled. The only connection I see is that the conveyance from Johnson and wife to Gentry is broad enough to carry the coal as to Johnson and wife and their grantee, Charles A. Johnson, and containing no reservation, broad enough also to carry coal as to Harvey and Thurmond, who are only protected by the record of their deed antedating that of Gentry; and as the plaintiff claimed coal and all, and it was to be settled who is entitled to land, including coal, it may be permissible to bring both sets of defendants before the court, so that plaintiff might have his rights settled, in the tract, its surface and minerals, finally as to all interests to avoid multiplicity of suits. But the connection is not clear. No fixed rules apply to multifariousness. It is difficult to say when

it applies. In *Oney* v. *Ferguson,* 41 W. Va. 570, the remark is made, which is spoken by the books, "The instances are numerous and inharmonious. A suit is not thrown out of court for this fault except in a plain case." It is discouraged by the courts where it would defeat instead of promote the ends of justice. Barton, Chan. Prac. 272. It is well established that the courts exercise a wide discretion in enforcing, or refusing to enforce, a dismissal for this cause. If we dismiss this suit, without deciding its merits, we do but protract litigation. As Judge Green said on page 269 of 30 W. Va., in *Shaffer* v. *Fetly,* where convenience and the administration of justice will be furthered by disregarding the objection, it may be done. The subject is well discussed in 14 Ency. Pl. & Prac. 194, 214, supporting views just stated.

We affirm the decree of the circuit court, without prejudice to the right of any party under the said reservation of coal for the domestic use of eight families in the deed from Johnson and wife to Harvey and Thurmond of 1st of May, 1880.

*Affirmed.*