## CHARLESTON.

JAMES RYAN *et al.* *v.* THE COUNTY COURT OF MONONGALIA COUNTY

(No. 6614)

Submitted January 8, 1930.   Decided January 14, 1930.

*Lazzelle & Lazzelle,* for plaintiffs in error.

*Albert Shuman* and *John D. Downes,* for defendant in error.

WOODS, JUDGE:

This is a proceeding in mandamus to compel the county court of Monongalia county to re-locate, alter and open, a certain road in Union district of said county, to-wit, the Sand Spring road. From a judgment of the circuit court, trying the case in lieu of a jury, denying the writ and dismissing the case, error is prosecuted to this Court.

The relators base their right to this summary remedy on an express oral authorization and establishment of the alteration and re-location of the Sand Spring road by the county court as a corporate body. The denial of such authorization by the answer of the county court defines the chief issue.

The county court is possessed only of such powers as are expressly conferred by the constitution and legislature, together with such as are reasonably and necessarily implied in the full and proper exercise of the powers so expressly given. It can do only such things as are authorized by law, and in the mode prescribed. *Barbor* v. *County Court,* 85 W. Va. 359; *Goshorn* v. *County Court,* 42 W. Va. 735. Our statute provides the course to be followed by the county court in the establishment or alteration of a county road. It may be done either upon a petition of any person setting forth specifically the nature and location of the proposed work, or the court may do so without such petition after notice, in any case in which they deem the best interests of the people of the county require it. It further provides that viewers shall be appointed, or a committee of their own body, who shall view the ground and report the advantages or disadvantages, which, in their opinion, will result as well to individuals as to the public from the proposed work and the facts and circumstances that may be useful to enable the county court to determine whether such work ought to be undertaken by the county. The court is further required to make careful examination of other routes or locations than that proposed or petitioned for, keeping in view at all times the possible future development of the county and the accommodation

of the general traveling public, and shall report in favor of the one they prefer, with the reasons for their preference, and a map giving the grades and bearings of the routes and locations shall be returned with their report. This report may be recommitted. Code, Chapter 43, section 137. The petition in the present case is to alter a road already established. This Court has held that a change in the location of a road, thus abandoning it on a former location, requires some affirmative act or order of the court authorizing or directing the change. *County Court* v. *Hopkins,* 80 W. Va. 393; *Dudding* v. *White,* 82 W. Va. 542.

The foregoing recital of statutory law and the construction put upon it by this Court reveals the prerequisite of a showing at least of a definite act of the court as a corporate body establishing a proposed change in a public highway. That a record of the fact would be the best evidence goes without saying. In fact, the absence of such record evidence generally is of itself conclusive in such matters. *Williams* v. *Main Island Creek Coal Company,* 83 W. Va. 464. The only record made here in regard to the establishment and alteration of the Sand Spring road is an order of the court filing the petition therefor, and reserving consideration of it until a future term thereof. This action of the court was taken on May 3, 1921. However, the relators rely upon the fact that a proceeding was instituted six years later in the circuit court for a condemnation of the lands which the proposed road would require to be taken. We are not advised of the full import of this alleged proceeding, except a recital in the petition for mandamus that a final order was entered therein on October 15, 1927, and that it approved the report of the commissioners, directed the payment to the property owner of the amount stated in the commissioner's report, ordered that the title to the easement of the lands so taken should vest in the applicant, and that the damages therein assessed were paid to the property owner by the county court. In valid proceedings of this kind it is sufficient to show that the lands proposed to be taken are to be used for public purposes, and that they are necessary for such purposes. It is a matter of common knowledge that oft-times the damages assessed are

more than the governing body of the municipality deems able to pay and the project is abandoned. Where the damages have been paid by the county, as appears in the case under consideration, the court, in view of the public funds available, would still be vested with discretionary power as to the time when the proposed project be entered upon. Mayhap it would not be estopped from refusing to use the land for the purposes for which it was condemned if for any reason the public interest demanded such action to be taken. So, this proceeding of itself would not necessarily establish the fact that the court had by an affirmative act authorized or directed the alteration and re-location of the road in question. Other acts relied on to the effect that certain proponents of the change in the highway had been furnished material for clearing the proposed changed highway of stumps, etc., likewise fall short of evidence within themselves of the establishment of the road.

Admitting that oral testimony can be received to show that the court in fact established the road by an affirmative action of the court in session, and which lacked only a recordation of its action, is the evidence proffered here of that cogency required to sustain mandamus? Judge Lazzelle's testimony in regard to the situation as he found it on appearing before the county court, for the relators, in June, 1929, is illuminating. He found the court at that time adverse to taking any action toward opening the road. The court expressed a desire "to go out and look the road over again." So, up to this time it did not look as if there had been any agreement. Subsequently the court in discussing the matter with Judge Lazzelle, in the language of the latter: "After talking some time, all talking together, all talking and taking an interest in it, Mr. Keener, the other two members being present and clearly by their attitude assenting to it, they said, 'Now, that is alright, we are going to open that road, that is settled.'" On the contrary, we have the testimony of one of the members of the court, who went upon the bench in January, 1929. He had formerly served as a supervisor of roads in Union district, where the proposed road was located. While occupying the latter position he

was required by the county court in March, 1927, to go out and make investigation of the proposed location of the Sand Spring road. He did so and reported adversely as to its feasibility. Upon being told by the supervisor of the estimated cost of the project, the supervisor says: ''They (the court) throwed up their hands and said: 'We weren't figuring on spending more than three or four hundred dollars'. That is all I know about the road at that time.'' He further states that while he was a member of the court that body took no action in the matter. As already shown, two modes are prescribed by law for the alteration and re-location of a public highway, either upon petition by taxpayers or by the county court of its own volition. There is no evidence in the record showing which method is relied on here. Nor is there shown the appointment of viewers, a return to the court of a report showing advantages or disadvantages of the proposed work, with map thereof, basic steps ordered by the statute to be taken in the proceedings of this kind. In view of the statute (Code, Chapter 39, section 46) requiring ''all the proceedings'' of the court to be entered of record, the fact that no record was made is potential evidence in determining whether the county court actually accepted the easement of the right-of-way and authorized the alteration and re-location of the road.

The evidence offered by the relators to show an affirmative action of the county court in making the proposed change in the highway under consideration is not of that clear and convincing character required to sustain mandamus. The public has a right to be advised from the records of the corporate body entrusted with the establishment, alteration and re-location of its public highways of all its actions in relation thereto. Courts should be slow to enforce affirmative action of such body where there is absence of such record. Rather that the relators should suffer injury than the public welfare be endangered by such forced action. The statute vests in the county court discretionary power respecting their right to control the location, establishment, alteration and opening for use and travel of the public roads in their counties. In the absence of a clear showing of affirmative action, by such

tribunal, locating, establishing and altering a highway, this power will not be controlled by mandamus. *Ryan* v. *County Court,* 86 W. Va. 40. But, even if the proposed change and re-location of the road had been properly authorized, the county court has discretionary power when to open it and prepare it for the use of the public. This action on its part is necessarily dependent upon the state of the public funds available for that purpose, and would not ordinarily be controlled by mandamus. So, on any view of the case made here, we are of the opinion that the ruling of the circuit court in refusing mandamus should be upheld.

*Affirmed.*