LONDA LILLY *et al. v.* OSCAR BOWLING *et al.*

(No. 8723)

Submitted April 27, 1938.  Decided May 10, 1938.

*Clarence W. Meadows, Ben H. Ashworth* and *Robert J. Ashworth,* for appellants.

*Hutchinson, Crouse & Trail,* for appellees.

Fox, JUDGE:

The appellants, Oscar Bowling, Sue Bowling and C. C. Griffith, complain of a decree of the circuit court of Raleigh County, the effect of which was to enjoin the use, by them, of a certain section of the Giles, Fayette and Kanawha Turnpike.

In the year 1924 Londa Lilly was the owner of two tracts of land on Glade Creek, in Raleigh County, one a tract of 45 acres conveyed to him by Garland T. Lilly, and the other 27 acres conveyed by A. B. Richmond. The 45-acre tract lay on both sides of the Giles, Fayette and Kanawha Turnpike, hereinafter called the turnpike, while the 27-acre tract lay entirely west of said turnpike as then located. To the north of the 45-acre tract, and east of the turnpike, were three tracts of land then owned separately by R. W. Lilly, J. R. Griffith and A. W. Griffith. Between the two tracts owned by the Griffiths was a county road leading into the turnpike. In the year 1924 a change in the location of the state highway through the lands of Londa Lilly was made. This change began at a point on the old turnpike, within the 45-acre tract, and ex-

tended to the 27-acre tract and through the same for an aggregate distance of approximately 1100 feet, merging into the pike at a point beyond the county road leading into the pike. This change cut off from the 27-acre tract an irregular oblong boundary and a small triangle of land from the 45-acre tract, and in 1932 Londa Lilly conveyed to his daughter, Sylvia J. Lilly, and her husband, Opal Lilly, a tract of 4.95 acres thereof, practically all of which was a part of the 27 acres, and except at the southern end, is entirely bounded by the new location of the state highway and the turnpike, the turnpike forming a loop about mid-way of which there was located a house called in the record the "Bowling house". In 1928 R. W. Lilly conveyed the tract owned by him (about 22.2 acres) to J. N. Hilton, who occupied the same for a short period and held title to the same until the year 1934, when it was conveyed to C. C. Griffith, who in turn conveyed the same to Sue Bowling, the present owner.

There is conflict in the evidence as to what took place as between the parties affected, subsequent to the change in the state highway, and before the institution of this suit. Londa Lilly states that he and R. W. Lilly agreed to abandon the turnpike road from near the house (called in the record the "Bowling house") in the direction of Princeton, but afterwards decided not to do so, and nothing came of the suggestion; he also says that after Hilton purchased the R. W. Lilly land he agreed to close the turnpike road from a point near the house to the intersection of the turnpike with the highway, in the direction of Princeton, and that Hilton erected a fence across the turnpike at two places, one near the house and the other at the south line of his property, and there is evidence that Hilton built a small one-car garage on a part of the roadway of the turnpike, and that in one or more seasons, small vegetables were cultivated on portions of the roadway. On the other hand, it appears from the evidence of R. W. Lilly that he stopped the placing of logs, stumps and other debris in the turnpike, and from other sources, that the turnpike was used by trucks in

1930; that it was continuously used by pedestrians; that the garage mentioned did not interfere with motor vehicle travel. Hilton died prior to the taking of proof in the cause, but the statement of Londa Lilly as to the agreement to close the road was not objected to, and such objection cannot be made at this time. *Willhide* v. *Biggs*, 118 W. Va. 160, 188 S. E. 876. Bowling acquired the 22.2 acres of the R. W. Lilly-Hilton property in July, 1934, and about eight months later asserted her right to use the turnpike road throughout, removed obstructions therefrom, and repaired the same. It appears that Oscar Bowling and C. C. Griffith were using the road in question in trucking mine props, and apparently for that reason, are made parties. No suggestion is made that the section of the turnpike from the Bowling house in the direction of Beckley was at any time intended to be discontinued. There is much testimony as to the relative convenience of the north and south exits from the Bowling property to the state highway, but this phase of the case is not deemed important.

This suit was instituted by Londa Lilly, Oscar Lilly and Sylvia J. Lilly, and an injunction sought to restrain the Bowlings and C. C. Griffith from interfering with the possession of the plaintiffs as to that part of the turnpike road from near the Bowling house to its intersection with the highway in the direction of Princeton. Defendants' demurrer to the bill was overruled, proof taken, a full hearing had, and the relief prayed for by the plaintiffs granted. The final decree separates the relief granted by enjoining the defendants from molesting or interfering with Opal Lilly and Sylvia Lilly in their possession, control, use and occupancy of the turnpike road along their property, and grants to Londa Lilly the same relief as to that part of the turnpike passing through his property. From this decree the defendants appeal.

The appellants say that the plaintiffs' bill is multifarious on the ground that the alleged rights of Londa Lilly on the one hand, and those of Opal Lilly and Sylvia Lilly jointly on the other, are separate and distinct, and

cannot be joined in one suit, and cite *Snyder* v. *Cabell*, 29 W. Va. 48, 1 S. E. 241, in support of their position. The question was properly raised by demurrer. Code, 56-4-36; *Lawhead* v. *Doddridge County Bank*, 119 W. Va. 467, 194 S. E. 79. The demurrer was properly overruled. The case cited by the appellants holds that a court of equity may exercise a sound discretion on the matter of a misjoinder of parties under the particular circumstances of each case. A strict application of the rule against multifariousness is not favored in our decisions. It is generally held that "Where convenience and the administration of justice will be furthered by disregarding the objection, it may be done." *Johnson* v. *Sanger*, 49 W. Va. 405, 38 S. E. 645; *Shaffer* v. *Fetty*, 30 W. Va. 248, 269, 4 S. E. 278; *Dudley* v. *G. W. Niswarder & Co.*, 65 W. Va. 461, 64 S. E. 745; *Ross' Admx.* v. *Ross*, 72 W. Va. 640, 78 S. E. 789; *Lynch* v. *Armstrong*, 81 W. Va. 134, 94 S. E. 24; *Crummett* v. *Crummett*, 102 W. Va. 151, 135 S. E. 16. It is disregarded where there is a reasonable connection between the rights asserted by the plaintiffs and the waiver of the rule tends to avoid a multiplicity of suits. Here, the question of the closing of a particular stretch of road is involved, and the asserted rights of the plaintiffs with respect thereto are identical. The defense made to the bill applies with equal force to all of the plaintiffs. The controversy is one and inseparable, and the court rightly exercised its discretion in upholding the bill on the point raised. *Snyder* v. *Cabell, supra; Lefever* v. *Thomas*, 69 W. Va. 88, 70 S. E. 1095; *Kitchen* v. *Local Union*, 91 W. Va. 65, 112 S. E. 198.

It is also contended that the plaintiffs had a remedy at law, and that the actions of the defendants sought to be enjoined amount to nothing more than mere naked trespasses for which the legal remedy of an action at law was adequate and complete. To this we cannot agree. The trespasses complained of were repeated and numerous, and promised to be continuously extended into the future. It is doubtful whether they may be made the basis of permanent damages, and if not, frequent

actions at law would be required. We hold the case to be one coming within the jurisdiction of a court of equity. *Coal & Coke Co.* v. *Bragg,* 75 W. Va. 70, 83 S. E. 190; *Dorsey* v. *Dorsey,* 109 W. Va. 111, 153 S. E. 146; *Stickler* v. *Bays,* 116 W. Va. 463, 181 S. E. 717; *Henline* v. *Miller,* 117 W. Va. 439, 185 S. E. 852.

The appellees would sustain the decree of the court below on two grounds: (1) That under Section 133, Chapter 43, Code 1923, the establishment of the change in the highway made by the state, that part of the turnpike affected by the change was automatically discontinued; and (2) that the agreement between Londa Lilly and J. N. Hilton in 1928, to close a part of the turnpike, followed by the abandonment of any maintenance, legally effected a discontinuance of that part thereof.

The statute relied on is of ancient origin. It was first enacted in 1863, and appears in the Code of 1868, Chapter 43, Section 32, which reads:

> "When any road is altered, the former road shall be discontinued to the extent of such alteration, and no further, and the new one established."

It was continued in this form in subsequent re-enactments of the road law until by Chapter 112, Section 133, Acts 1921, it was changed by adding at the end the words, "unless otherwise ordered by the court", in which form it appeared in Code 1923, Chapter 43, Section 133, and remained the law until superseded by the provisions of Chapter 40, Acts First Extra. Session 1933, Code, 17-4-4.

Other methods are provided for the alteration or discontinuance of public roads. Code 1923, Chapter 43, Sections 135-6-7. Section 135 makes provision for change, under prescribed restrictions, by consent of parties, but the other methods authorized require notice and hearing. These statutes were enacted in the early history of the state (Code 1868, Chapter 43), and have been the subject of numerous decisions by this court. The tenor of

these decisions is to lay down a rigid rule, requiring a strict compliance with the terms of the statute, and a clear showing of the advisability of any proposed change. *Conrad* v. *County of Lewis*, 10 W. Va. 784; *Keystone Bridge Co.* v. *Summers*, 13 W. Va. 476; *Lazelle* v. *Garlow*, 44 W. Va. 466, 30 S. E. 171; *County Court* v. *Hopkins*, 80 W. Va. 393, 92 S. E. 662; *Dudding* v. *White*, 82 W. Va. 542, 96 S. E. 942; *County Court* v. *Hall*, 99 W. Va. 1, 128 S. E. 284; *Ryan* v. *County Court*, 108 W. Va. 404, 151 S. E. 315. Affirmative action on the part of the county court was required, and the burden of showing such action rested upon the party who asserted the change or discontinuance. The proposition of law that a public road once established continued as such until legally abandoned, was rigidly upheld. Tested by these authorities, there is no showing in the case at bar that there was any affirmative action on the part of the county court abandoning or discontinuing any part of the turnpike road, nor is any such claim made by the appellees.

The case for the appellees therefore rests, as to this phase, on the contention that the portion of the turnpike in question was abandoned and discontinued by operation of law. This contention, if sustained, would result in the discontinuance of the entire section of the turnpike affected by the change in the main highway, and would result, not only in cutting off from access to the highway the Bowling and Griffith properties, but those living on the county road leading into the turnpike as well. We cannot reconcile ourselves to the view that the statute relied on was intended to have that effect. The protection which the statutes and the decisions of this court have thrown around the right of access to the public highways, as illustrated by the cases cited above, argues strongly against such construction, and we hold that it does not apply in a case where its effect would be to deprive citizens of access to the public roads, or where it would operate to deprive the public of the use of other roads leading into the road sought to be discontinued, and was only intended to apply to cases where abutting prop-

erty owners and citizens, other than those through whose property an alteration is made, are not injuriously affected by the alteration. In cases where other property owners and the public are affected, there must have been, at the time, affirmative action by the county court upon notice and hearing. Therefore, the change in the state highway did not, under the circumstances developed by the record, operate to discontinue any part of the turnpike road involved in this suit.

The evidence tends to establish an agreement between Londa Lilly and J. N. Hilton that a part of the turnpike in question be abandoned and discontinued as a public road, and the appellees rely upon that agreement as supporting the decree of the trial court. Public rights cannot be made the subject of private contracts. Public highways, once established, cannot be abandoned or discontinued except in the manner provided by law. The agreement in question has no binding force as effecting the continued existence of the turnpike road as a public highway.

The decree of the circuit court is reversed, and this court proceeding to enter such decree as should have been entered by the court below, the bill of the plaintiff will be dismissed with costs to the defendants below, and the appellants in this court.

*Reversed and rendered.*