# CHARLESTON.

## ONEY *et al. v.* FERGUSON *et al.*

Submitted September 16, 1895—Decided Dec. 11, 1895.

1. ADMINISTRATORS AND EXECUTORS—FOREIGN EXECUTOR.

   A grant of administration or letters testamentary in another state has no force outside that state, so as to subject the administrator or executor to a suit here for an account, unless he reside and have assets here.

2. MARRIED WOMAN—WIFE'S SEPARATE ESTATE—WIFE'S SEPARATE BUSINESS.

   Under section 12, chapter 66, Code 1891, a debt incurred by a married woman in separate business will not bind any of her separate estate, other than that used in such business, unless it be by a writing executed, acknowledged, and recorded as in that section required.

3. MARRIED WOMAN—WIFE'S SEPARATE ESTATE—EQUITY JURISDICTION.

   Under Acts 1893, c. 3, s. 15, a married woman may be sued in a court of law for a legal demand, and there is no longer jurisdiction in equity to charge her separate estate, as before that act, for such legal demand, that act having superseded it. If the demand be of equitable nature, so as to warrant equity jurisdiction in the case of a *feme sole*, there would be jurisdiction in equity against such separate estate.

SIMMS & ENSLOW for appellants:

I.—*The bill is not multifarious.*—1 Barton's Equity, 253-256.

II.—*Jurisdiction as to Peebles, executor.*—1 Rob. Prac. 179-192;

1 Bart. Eq. 153; 11 Leigh, 1; 14 Gratt. 209; 11 Gratt. 792; Lomax, Ex. Vol. 1, 242-555; 56 Gratt. 326; Pom. Eq. 278; 2 Wheat. 373; 5 Lea, 353; 10 Lea, 392; 5 Wall. 433.

III.—*The tenant who rents by the month should not be a party.*—1 Bart. Chy. and authorities in note 6.

IV.—*That a married woman could bind her estate in 1892.*—Code of 1891, chapter 66, section 12; Acts of 1893, passed February, 1893.

V.—*That equity has jurisdiction and that there is no remedy at law.*—1 Pomeroy, § 156-279; 3 Pom. Eq. § 1128; 25 Miss. 236; 4 Ired. Eq. 131; 12 B. Mon. 479; 4 Leigh, 550; 79 Va. 617; 13 W. Va. 572; 27 W. Va. 555.

CAMPBELL & HOLT for appellees:

I.—*The bill is multifarious.*—Barton's Chy. Prac. Vol. 1, page 253-4; Story's Eq. Pleading, § 271.

II.—*Robert Peebles, executor can not be compelled to account as such, in a foreign jurisdiction under the circumstances of this case; and the Court has no jurisdiction to enter a judgment in rem against him here on account of the location of property in this state, unless that property be seized by attachment or otherwise.*—15 Pet. (U. S) 5; 11 Gratt. 610; 15 W. Va. 609; 95 U. S. 714; 10 Wall. (U. S.) 319; Hawes on Jurisdiction of Courts, § 233; 44 Mo. 274; 28 Ohio St. 469.

III.—*The tenant in possession of the property sought to be extended or sold, is a proper, if not a necessary, party defendant.*—27 Gratt. 777.

IV.—*The assignment was made by Mrs. Ferguson during coverture on the 21st of January, 1892, and was inoperative to charge her separate estate because the provisions of the statute were not complied with.*—Section 12, chapter 66, of the Code of West Virginia, of 1891.

BRANNON, JUDGE:

Rachel R. Hamilton, of Ohio, by her will directed its executor to purchase and furnish a home for Elizabeth J. Ferguson during her life, and also directed said executor to invest five thousand dollars, to be held in trust for

Elizabeth J. Ferguson, and apply its net income to the payment of taxes and repairs of the property to be so purchased. Robert Peebles, the executor, who qualified in Ohio, under a probate of the will in that state, under the directions of the will purchased a house and lot in Huntington, W. Va., taking the deed in his name as executor. He also invested the five thousand dollars, but not in this state. Mrs. Ferguson resides in said house in Huntington. In 1892 Mrs. Ferguson became indebted to the Bank of Huntington, and to secure the indebtedness assigned to the bank two thousand, six hundred and fifty dollars out of her interest in the estate of Mrs. Hamilton, and by the written assignment directed Peebles, the executor, to pay it. Afterwards, on 22d December, 1893, Mrs. Ferguson executed to the bank her note for balance of that debt. There was also a small debt of eight dollars due the bank from Mrs. Ferguson, due 20th March, 1894.

Trustees of the bank, Oney and Enslow, filed their bill in the Circuit Court of Cabell county against Mrs. Ferguson and Peebles, as executor of said will, and as trustee for Mrs. Ferguson, seeking to compel Peebles, as executor, to pay the sum assigned the bank by Mrs. Ferguson out of her interest in the estate of Mrs Hamilton, and seeking to sell or rent said house and lot for said debt. Mrs. Ferguson demurred to the bill, and it was dismissed, and the plaintiffs appeal.

One ground of demurrer is that the bill is multifarious as presenting two distinct causes of suit against two distinct sets of defendants in one suit—the demand against Mrs. Ferguson on her note to subject the house and lot, and the demand against Peebles, as executor, to subject assets in his hands to answer the assignment. These are distinct matters, it is said. Recovery on either will satisfy the debt. It is difficult to apply the rule against multifariousness in practice. The instances are numerous and in-harmonious. A suit is not thrown out of court for this fault, except in a plain case. Now, this bill seeks one debt. The note represents it, and binds both the house and the assets in the executor's hands as a note only, as the bill claims, while the assignment affects the assets in Peebles'

hands. They do not present two separate, distinct matters, because both note and assignment predicate a liability on both house and assets for the one debt to which they relate. The plaintiff presents the note as binding two subjects, house and assets; the assignment as binding the assets, if not the house also. Thus, they do not make multifariousness as presenting two distinct causes of suit. They are not distinct and independent. Mrs. Ferguson is a proper party to defend both as to the house and assets, and Peebles a proper party as to both, the assets being in his hands, and the very title to the house in him—he and she interested in both. So there is no multifariousness.

Another point under the demurrer—want of jurisdiction as to Peebles, he being a non-resident and a foreign executor, and proceeded against by order of publication. A grant of administration abroad has no force *extra territorium*, and the executor or administrator can not, as a rule, sue or be sued outside the state conferring his authority. *Crumlish* v. *Railroad Co.*, 40 W. Va. 627 (22 S. E. 90); 1 Lomax, Ex'rs, 555 (341); *Andrews* v. *Avory*, 14 Gratt. 239; 1 Rob. Prac. 191; *Vaughan* v. *Northup*, 15 Pet. 5. But where the executor comes and resides in this state with assets, he may be sued here, and compelled to account here. *Powell* v. *Stratton*, 11 Gratt. 792; *Tunstall* v. *Pollard*, 11 Leigh, 1. But this executor brought no assets here, save what he invested in the house, and they were no longer assets to be administered, as they had been administered and became property of Mrs. Ferguson. And surely a court of this state could not compel him to render an account here. You could take no personal decree to account or otherwise. So, as to that matter, there was no jurisdiction as to Peebles. But then, the deed to the house was in his name as executor, and therefore trustee, and he was a necessary party, and order of publication brought him before the court.

Another point under the demurrer—that tenants occupying part of the house are not parties. There is no need of making monthly tenants parties.

The next point made to sustain the demurrer is that there was no power in Mrs. Ferguson to make the assignment. This assignment was made while the act of 1891,

found in chapter 66, Code 1891, was in force, and section 12 limited the power of a married woman to charge her separate estate to the cases specified in it; and this debt is not justified in its incurrence except by the fourth clause, that it was for goods bought in carrying on a separate business, and the bill shows that the property used therein was gone; and this being an effort to subject other separate estate, it could only be charged by a writing executed, acknowledged, and recorded as by that clause required, and this, not being such a writing, is ineffectual to charge the assets in the hands of the executor. If the point were made that the debt to pay which the assignment was made was enforceable against the separate estate, if that would validate it, I will say that, a married woman being only then bound under such circumstances, he who would charge her property must affirm facts charging it; and the bill does not state the date of birth of the debt, saying only that on 21st January, 1892, she was indebted and gave the assignment. But, anyhow, how can the assignment be enforced against assets in the hands of a foreign administrator by suit here, if the assignment were valid, when no personal decree to pay or account can be made?

The last ground of demurrer is that plaintiffs have adequate remedy at law. We discard here the assignment as giving action. Then take the note made 22d December, 1893. On that note she could be sued at law, and the judgment would be a lien on the *corpus* of her real estate, her life estate in the lot, under section 15, chapter 3, Acts 1893, and execution could issue on it. *Williamson* v. *Cline*, 40 W. Va. 194 (20 S. E. 917). Does that oust the jurisdiction of equity? I think so. The act makes the *corpus* of her realty liable as if she were sole; not merely rents and profits. Equity could only take rents and profits before the act, and that only during coverture; but a judgment takes her entire estate. She is put on the footing of a *feme sole*. Where are the reasons for longer retaining equity jurisdiction? Against others there must be judgment as a condition precedent to a lien on the realty; either its rents or the body of the estate. Will you allow a creditor at once to proceed against a married woman and rent her

land, when it could not be done against a man or *feme sole?* In the case of a man or *feme sole,* there must be a *fieri facias* before the lien of a judgment can be enforced as a lien against the rents or body of the land. They are given a chance to save the land. Why not the same as to a married woman? In *Andrews* v. *Monilaws,* 8 Hun, 65, a statute was considered, like ours, which enacted that a "married woman may be sued in any of the courts of this state, and whenever a judgment shall be recovered against a married woman, the same may be enforced by execution against her sole and separate estate in the same manner as if she were sole." It was held "that, the statute having given a legal remedy, which was adequate, there was no occasion for administering equitable relief." It was held that the act operated to supersede the suit in equity. See cases cited there; Wells, Mar. Wom. 552; *Conway* v. *Smith,* 13 Wis. 137.

It seems that our statute came from the New York act, and in adopting it we adopt also its construction before the date of the act here. If the demand be of legal nature, she is suable at law, as would be a *feme sole* or man; if of equitable nature, equity has jurisdiction, as in case of a *feme sole* or a man. Could we say, from the record—what is suggested in a brief—that the indebtedness for which the note was given existed prior to the disabling act of 1891, it would raise the question whether, as a promissory note is not *prima facie* payment of antecedent indebtedness, a suit in equity could be maintained for the antecedent indebtedness, or would be limited to an action on the new note; but we can not see that it existed before January 21, 1892, or how long before. If made under act of 1891, a mere note for a debt incurred in separate business would not bind other estate than that engaged in the business. Of course, the assignment was not intended to pass any interest in the house, and could not, under the law when it was made, as shown above. So equity jurisdiction on its strength can not be sustained, either against the real estate or personal assets; nor can it be on the note.

Therefore, we must affirm the decree, without prejudice to proceedings at law to obtain judgment and enforce it against any estate it may bind.