# ˙CHARLESTON.

ROUND BOTTOM COAL & COKE COMPANY *v.* BEN FRANKLIN
COAL COMPANY OF WEST VIRGINIA.

Submitted March 15, 1921. Decided March 22, 1921.

1. QUIETING TITLE—*Allegation That Plaintiff is in "Possession"
   Held Sufficient Allegation of Actual Possession.*

   The allegation in a bill to remove cloud upon title to land
   that plaintiff is in possession thereof, prima facie means
   actual possession, and on demurrer constitutes sufficient alle-
   gation of actual possession.  (p. 263).

2. EQUITY—*General Demurrer to Bill Setting Up Several
   Grounds for Relief Challenges Bill As a Whole.*

   A general demurrer to a bill setting up several grounds for
   relief challenges the sufficiency of the bill as a whole and does
   not call for adjudication as to the sufficiency of each one of
   the several parts, and if one ground be good, the general de-
   murrer is properly overruled.  (p. 264).

Case certified from Circuit Court, Marshall County.

Suit by the Round Bottom Coal & Coke Company and
others against the Ben Franklin Coal Company of West Vir-
ginia.  Case certified as to correctness of order overruling
defendant's demurrer.

*Affirmed.*

*McCamic & Clarke,* for plaintiffs.

*B. B. Evans, Charles E. Carrigan* and *James Ralph,* for
defendant.

MILLER, JUDGE:

The circuit court has certified to us the correctness of its
ruling upon the defendants' demurrer to plaintiffs' bill.

The main object of the bill was to set aside and have re-
moved as clouds upon plaintiffs' title to the coal under a
tract of land known as the "Potts Tract", situated in Mar-
shall County, two deeds dated April 14, 1919, of record in
said county, in Deed Book Number 155, at pages 51 and 53
respectively; the first executed by defendant Kate Higgins,

widow of the late John Higgins, to the defendant Ben Franklin Coal Company of West Virginia; the second executed by Houston Higgins, Grayce Hoffman and Everett Hoffman, her husband, and Marie Keffer and William Keffer, her husband, heirs at law of said John Higgins, deceased, to the same Company; whereby Kate Higgins, grantor in the first deed, purported to convey to the grantee therein all her dower right, title and interest in and to all the coal of which said John Higgins died seized in fee simple together with all her right, title and interest in and to the mining rights appurtenant thereto and thereunto belonging, the same being all that part of said coal which was conveyed by David Roberts and wife to Simeon B. Purdy, by deed dated January 7, 1843, and·subsequently through mesne conveyances to said John Higgins, and being that part of the said coal remaining after the conveyance by said John Higgins and wife to James W. Wiley, of the coal under a tract of thirteen (13) acres and eighty-seven (87) poles, with mining privileges, and the coal under a tract of 228 1-2 acres adjoining the first tract, with like mining privileges, by two deeds, both dated May 5, 1902, the first recorded in said Marshall County in Deed Book No. 128, page 282, and the second recorded in said county in Deed Book No. 84, page 428; and whereby the said Houston Higgins and others, grantees in the second deed, purported to grant and convey to said Ben Franklin Coal Company all their three-fifths undivided interest with like mining rights and to the same coal so remaining vested in said John Higgins at the time of his death, more definitely described as that part of the coal underlying that part of the larger tract known as the ''Potts Farm''.

The said bill also seeks to have cancelled and removed as clouds on plaintiffs' title to the coal under the ''Potts Farm'' so much of two other deeds executed by the widow and heirs of said John Higgins since his death, the first a deed to J. M. Williamson in fee for the surface of 72.82 acres, recorded in said county in Deed Book No. 137 at page 280, the second to A. H. Ferris in fee for 169.22 acres of surface, which included the surface of the 13 acres and 87 poles, recorded in

Deed Book No. 141 at page 466, as purported to reserve to the grantors "a right of way or entry in and through said tract or parcel of land hereby conveyed, under the surface thereof, to the tract known as the Potts land, at such points and in such manner, under the surface, as may be necessary or useful so that the coal within and underlying the said Potts land may be mined and taken away through said right of way or entry or entries;" and also that part of said deed to said Ferris providing as follows: "Also reserving * * * the right to mine and operate on that part of the aforesaid land heretofore conveyed to the said John Higgins and described in the deed conveying the same as containing 13 acres 87 poles with the usual and customary mining rights and privileges, so as to enable the said grantors, their heirs, personal representatives and assigns to mine and remove the coal within and underlying the Potts land, and if any surface of the 13 A. 87 poles of land shall be used in the mining and removing of the said Potts coal, the same to be paid for at the rate of $25 per acre, which payment shall be made before the said land is occupied and shall entitle the said grantors, their heirs, personal representatives and assigns to a deed in fee for the part so taken and used."

The bill further alleges that the several deeds and proceedings which it seeks to have removed as clouds on plaintiffs' title to the coal under the Potts Farm were made and executed since the decision here of the case of *John Higgins* v. *The Round Bottom Coal & Coke Company*, reported in 63 W. Va. at page 218, giving construction to the deed of David Roberts to Simeon B. Purdy, dated January 7, 1843, for the 13 acres and 87 poles, part of said 400 acre tract, as shown in the opinion in that case, the particular provision in which, now relied on by defendants, thereby construed, is as follows: "Also the privilege, should the said Purdy, his heirs or assigns, open a coal mine on said tract of land, of undermining southward beyond the lines of said tract of land so far as not to injure the tract of land of which this was a part and now taken from."

In the former case, as in this, the questions presented were

by the demurrer to the bill. In the former case we were careful not to in any way conclude the parties on the merits of the case. We quote from the opinion the following: "What is here said is predicated on the allegations of the bill. The answer and evidence adduced hereafter, if any, may wholly alter the case." The bill now before us exhibits the record of the subsequent proceedings of the circuit court in the former case after it was certified back for further proceedings, showing that defendants answered and took evidence in support thereof, and that plaintiffs took no proof in support of their bill; but that when the case was matured for hearing on defendants' answer and evidence, plaintiffs were permitted by order of the court to dismiss the suit without prejudice; and it is alleged in the bill that by the dismissal thereof nothing was decreed concluding the parties, and that the rights of the parties remained the same as if the suit had never been brought or prosecuted on appeal to this court on the demurrer to the bill, sustained below but here overruled.

The question now certified is whether in view of our holding in the former case the present bill presents any basis for equity jurisdiction or for the relief prayed for. Construed in the light of the provisions of the deed there involved and the facts alleged in relation thereto, and particularly with reference to the map exhibited with the present bill purporting to show the location of the 13 acres and 87 poles with reference to the lines by which the coal in question was to be determined, we decided that the privilege or grant of coal beyond the lines of the tract specifically included the title to the coal in the residue of the larger tract of which the 13 acres and 87 poles was a part lying southwest as well as south of the granted parcel and withheld the right to make openings in said residue for mining purposes, by prescribing the mode of removal of the coal to be by means of an opening to be made in the parcel granted. That decision, as now interpreted by defendants, if they may rely thereon, would cover most if not all of the coal under the Potts Farm claimed by them. But the bill here exhibits a map or survey of the land granted, and of the lots into which the original 400 acres was divided, and with reference to which it is al-

leged the coal under lot No. 1, the 13 acres and 87 poles, and also under No. 3, the 228½ acre tract, was conveyed by Higgins to Wiley on May 5, 1902, and applying the rules for interpreting the deed followed in our decision in the former case, a very large portion of the coal under the Potts Farm would not be covered by the reservation or grant contained in the deed from Roberts to Purdy, of 1843. So that if the allegations of the present bill be true and the lines of the 400 acre tract are correctly shown on the map of the survey thereof exhibited with the bill, the deeds of the widow and heirs of Higgins, of April 14, 1919, and the reservations in the deeds to Williamson and Ferris would constitute clouds on the title of plaintiffs to all of the coal under that part of the Potts Farm which would not fall within the extended lines of the 13 acres and 87 poles as shown on the said map and survey, and to that extent at least the bill presents good ground for relief, provided of course the possession by plaintiffs be well pleaded and then established by proof.

For the purposes of the demurrer all matters well pleaded must be taken to be true.  The first point of demurrer is that the fact of actual possession by plaintiffs is not sufficiently alleged, wherefore the right to relief by removal of cloud is not shown by the bill.  The bill here does allege that plaintiffs were in possession of the coal.  In *Sansom v. Blankenship*, 53 W. Va. 411, following *Moore v. McNutt*, 41 W. Va. 695, we held that the allegation that plaintiffs were in possession, prima facie meant actual possession.  So that on demurrer we must accept the allegation of the bill as to possession as the equivalent of an allegation of actual possession, and our opinion is that this point of demurrer was properly overruled by the circuit court.  It is argued in this connection also that plaintiffs do not show clear title to the coal.  But if the facts be as alleged, and as they must be regarded on demurrer, plaintiffs do have clear title to at least a greater part of the coal under the Potts Farm, not from Higgins or the Higgins heirs it is true, but by deed from J. B. Potts and wife, of April 1, 1903; and the only adverse title or claim of defendants, so far as the bill shows, was derived by the deed of the Higgins heirs, made subsequently

and depending on the true interpretation and the application thereof to the ground of the privilege or grant conveyed in the deed from Roberts to Purdy, of 1843. If the allegations of the bill be true, there is certainly coal under the Potts Farm not covered by the deed of the Higgins heirs to the defendant company, wherefore there is equity in the bill to remove cloud from plaintiffs' title thereto.

Plaintiffs' counsel in argument have appealed to us to settle and adjudicate finally the rights of the parties on all issues presented by the bill and exhibits. This we can not do, of course. The demurrer was general and in no way limited to any particular issue. For instance, we are requested to decide whether or not the grant to plaintiff Wiley of the coal under the 13 acres and 87 poles and under the 228½ acres divested the Higginses of all right and title to take coal from any of the land outside of or beyond the boundaries of those deeds and of all mining privileges to remove any coal through or over those tracts from adjoining lands. The defendants' demurrer might have been both general and specific as to those questions, but it was general, and the general demurrer would not reach the specific questions sought to be presented. As we held in *City of Wheeling* v. *Chesapeake & Potomac Telephone Co.*, 28 W. Va. 208, point 6 of the syllabus, "A general demurrer to a bill in equity setting up several grounds of relief challenges the sufficiency of the bill as a whole and does not call for adjudication as to the sufficiency of each one of the several parts." If we might properly respond to the specific question thus sought to have decided, it would be inadvisable to do so, for the whole case may be changed on the answer and proofs at final hearing; and indeed on the question of possession the plaintiffs may not be able to establish by proof the fact of possession entitling them to relief in equity to remove a cloud, and the case may never reach a final decision on the rights of the parties.

Wherefore we are of opinion to affirm the ruling below on the demurrer, and to so certify our decision to the circuit court.

*Affirmed.*