# CHARLESTON.

JOHN MOTLEY MOREHEAD *v.* THE NEW RIVER POWER COMPANY
*et als.*

Submitted May 10, 1922.    Decided May 23, 1922.

1  EQUITY—*Matter Alleged as Basis of Prayer for Discovery Held
        an Incident to Cause Stated, not a Statement of an Addi-
        tional Cause.*

   Matter alleged, as the basis of a prayer for discovery, in a
   bill setting up a cause of action affording ground for equitable
   relief, by reason of its nature and not by reason of necessity
   for discovery, is incident to the cause of action stated and
   does not constitute a separate one.    (p. 284.)

2.  SAME—*Neither Joinder of Legal Demand With Equitable one
        Nor an Insufficient Equitable Demand With a Sufficient one
        Renders Bill Multifarious.*

   Neither the joinder of one or more legal demands or causes
   of action, with an equitable one, nor of an insufficient equitable
   demand, with a sufficient one, in a bill in equity, renders the
   bill multifarious.    (p. 285).

3.  SAME—*Bill Stating Two or More Grounds for Liability for
        Same Debt Dependent on Same Evidence Held Not Mul-
        tifarious.*

   In the statement of a cause of action in a bill in equity, two
   or more grounds or bases of liability for the same debt, sub-

stantially dependent upon the same evidence, or of such character that one may be made to include the others as bases or pillars thereof, may be united without subjecting the bill to the objection of multifariousness.   (p. 285).

4   .Same—*Bill for Discovery and Collection of Assets Fraudulently Transferred Held Insufficient in Law as to all Parties.*

A bill against one corporation, as the execution-proof judgment debtor of the plaintiff, and two others and certain individuals, directly and positively charging, upon information and belief, the existence of liability of one of the corporations to the debtor, by reason of unpaid subscriptions to its capital stock, and other assets held by all of the defendants in concealment, by means of fradulent transfers, conveyances, gifts, secret trusts and the like, and praying discovery and collection of such assets and subjection thereof to the payment of the debt, is sufficient in law, as to all of the defendants.   (p. 285).

5.   Same—*On General Demurrer Bill Will be Held Sufficient if Disclosing One Sufficient Ground for Relief.*

Upon a general demurrer to a bill purporting statement of two or more grounds of relief, ascertainment of disclosure of one sufficient ground renders it unnecessary to inquire as to the sufficiency of the others, and the demurrer will be overruled.   (p. 288).

6.   Same—*Demurrer to Bill and to Each and Every Claim for Relief Therein is a General Demurrer.*

A demurrer in terms to a bill and "specifically to each and every claim of relief set forth therein," is a general demurrer assigning causes of demurrer.   (p 289).

7.   Same—*Demurrer to Part of Bill Must Point out Specifically by Paragraph or Page, or Other Means of Reference, to What it is Intended to Apply.*

Ordinarily, a demurrer to a part of a bill, to be sufficient, must point out specifically by paragraph,  page  or  other means of reference, the part to which it is intended to apply.   (p. 289).

### Appeal from Circuit Court, Kanawha County.

Action by John Motley Morehead against the New River Power Company and others; and from a decree dismissing the amended bill on demurrers interposed thereto, and

denying plaintiff leave to file a second amended bill, the plaintiff appeals.

*Reversed; demurrers overruled; remanded.*

*Alden, Latham & Young,* for appellant.

*Payne, Minor & Bouchelle,* and *Charles A. Boston,* for appellees.

POFFENBARGER, PRESIDENT:

This appeal has brought here for review a decree dismissing an amended bill in equity, on demurrers interposed thereto, and denying leave to the plaintiff to file a second amended bill in the cause.

There is no material difference between the first and second amended bills, wherefore they need not be separately considered. Both are lengthy and each sets forth, with considerable detail, a great many transactions which are alleged to be so interlaced and related as to make them relevant and material to what is said to be the main ones constituting grounds of relief. The appellant seems to say the general object of the suit is enforcement of an alleged liability of the Virginian Power Company, a corporation, in the sum of $63,042.29, upon what may be deemed to be alternate grounds: a contract beclouded, obscured and impeded by the character, number and variety of the instrumentalities used in the making thereof, and assets of other corporations, liable for the debt and received and concealed by the Virginian Power Company, as to which discovery is sought. Two other corporations and certain individuals are made parties defendant, because they were connected with the transactions out of which the indebtedness arose and participated therein, and because they are alleged to have been mere instrumentalities used by the Virginian Power Company, in the execution of purposes which included the creation of the indebtedness. One of the other corporations is the New River Power Company in whose name the debt was created or contracted, and the other, the Dominion Power Company in whose name a contract was made with the plaintiff, as executor of the will

of his father, and his mother, a devisee under said will, which it assigned to the New River Power Company. The individual defendants are officers, agents and direct and indirect stockholders of the three corporations. These two contracts and their terms and purposes are stated in the bill, together with the history and relations of the three corporations above named and two or three others, as well as the relations of the individual defendants to all of said corporations. For the appellees, it is insisted that the bill sets up five distinct causes of action, three of which are equitable and the other two legal. Under these contentions, are based charges of misjoinder of parties and multifariousness which the court below sustained.

In 1908, J. Turner Moorehead, father of the plaintiff, owned a tract of land in Fayette County, containing 365 acres, and another tract in Raleigh and Summers Counties, containing 1200 acres, made up of 22 smaller tracts. They were located along the New River and had been acquired by their owner for water power sites. Sometime between 1908 and June 8, 1912, he died testate, leaving said properties to his widow and making the plaintiff, his son, the executor of his will. On June 8, 1912, the plaintiff and his mother granted to John J. Mott, his heirs, executors, administrators and assigns, an option to purchase said properties at the price of $200,000.00. On September 30, 1912, Mott assigned the option to the Dominion Power Company and that company gave the owners notice of its acceptance of the option, October 4, 1912, and thereby converted it into a contract. In the meantime, the Virginian Power Company, had been organized and then had control of the stock of the Dominion Power Company. in furtherance of its plans to obtain control of all the water power sites in the New River valley, the Virginian Power Company caused the Dominion Power Company to assign and transfer the option and contract, to the New River Power Company, without the knowledge or consent of the plaintiff. A few days later, October 16, 1912, the Virginian Power Company paid or caused to be paid to the plaintiff and his mother $10,000.00 in cash, on account

of the purchase money, and caused the New River Power Company to accept a conveyance of the properties and to execute its notes for the balance of the purchase money, $190,000.00, and secure payment thereof by a deed of trust on the property. On or about October 10, 1913, the Virginian Power Company paid the first one of the notes given for deferred purchase money.

The defendant A. B. Leach of New York, a banker, individually and in connection with his banking firm, A. B. Leach and Company, was the organizer and promoter of the Virginian Power Company, and all of its alleged subsidiaries and dummies, and they were organized and used for the purpose above stated. The Virginian Power Company was made the dominant or parent concern. Everything of value and necessary to accomplishment of the main purpose was ultimately put into its hands. While the water power sites were held by its subsidiaries, without development of any of them, it secured long time contracts from practically all of the consumers of electricity in the New River Valley, and having done so, it constructed a steam power plant. Having thus rendered competition practically impossible, it substantially abandoned the water power sites in the hands of its worthless subsidiaries. At least, that was the fate of the sites obtained from the plaintiff. On the second installment of deferred purchase money, the New River Power Company made default, at the instance of the Virginian Power Company, and, in 1915, the plaintiff, in a foreclosure suit brought in a federal court, caused the property to be sold and the proceeds to be applied on the debt, and obtained a decree against the New River Power Company, for the balance remaining due, $63,042.29. On that decree, an execution was issued and returned unsatisfied, before the institution of this suit.

Prior to the date of the conveyance made to the New River Power Company, the vendors had no knowledge of its existence. The request made by A. B. Leach, for the conveyance to it was the first intimation to

them of its existence. Upon inquiry then made, the plaintiff was informed, the bill says: "That the organization of the said New River Power Company and the taking of title to said properties by such corporation was the method and plan that had been adopted by the said Leach and the said Virginian Power Company to carry out the development of the said properties, and that they, the said Leach and the Virginian Power Company, were going to immediately develop one of said water power properties, namely the "Richmond Falls" site, and that even though the said notes of the New River Power Company were not paid promptly at maturity and it were necessary for the said Mary E. Morehead and your orator to retake the said properties under the deed of trust, that your orator and the said Mary E. Morehead would then acquire a developed or partially developed water power property." It further alleges: "That as a result of such representations and believing and relying thereon, your orator and the said Mary E. Morehead were induced to and did in fact accept the notes of the said dummy corporation, to wit the New River Power Company; that at such time neither your orator nor the said Mary E. Morehead had any knowledge or information concerning the existence of the various dummy corporations that were being used by the said Leach and the said Virginian Power Company, in securing title to all the water power properties and sites in the New River Valley, and that your orator and the said Mary E. Morehead then believed they were dealing with a thoroughly responsible concern and the concern that would ultimately make the actual development of the water power sites in the New River Valley, including the water power sites and properties conveyed to the said New River Power Company."

Although the bill charges that all or practically all of the other water power sites in the New River Valley were manipulated into the hands of corporate dummies of the Virginian Power Company, the history and present status of none of them, save the two herein described, are given. But it charges the organization of two Dominion Power Companies, one of Virginia and the other of West Virginia, and

also of one called the West Virginia Power Company. What properties the Dominion Power Company of Virginia and the West Virginia Power Company handled, or what functions they performed, the bill does not indicate, but those companies are alleged to have been mere dummies. All of the corporations mentioned had the same officers and were under the same management. The Dominion Power Company of West Virginia organized in 1911, had an authorized capital stock of $100,000.00 of which $500.00 is known to have been subscribed, and, on the subscriptions, $50.00 to have been paid. In 1913, the capital stock was reduced by resolution to $10,000.00. The New River Power Company, organized about October 5, 1912, had an authorized capital stock of $200,000.00 of which $500.00 is known to have been subscribed, and, on it, the minimum payment of ten per cent. to have been made. The Virginian Power Company was organized under the laws of Massachusetts, about September 25, 1912, with an authorized capital stock of $10,000,000.00, divided in to 50,000 shares of preferred stock and 50,000 shares of common stock of the par value of $100.00, five of which are known to have been paid for in full. About June 2, 1913, it executed a deed of trust to secure an issue of collateral bonds, in the aggregate amount of $15,000,000.00. The West Virginia Power Company was organized, about February 23, 1912, with an authorized capital stock of $5,000,000.00 which was increased, September 18, 1912, to $6,200,000.00. On or about, September 25, 1912, all of this, 62,000 shares, was issued and delivered to the Virginian Power Company, in exchange for a like number of shares of the Virginian Power Company stock, issued as fully paid and non-assessable. Then the capital stock of the West Virginia Power Company was reduced, June 19, 1913, to $10,000.00. None of the subsidiary companies, except the Dominion Power Company of West Virginia and the New River Power Company, are alleged to have had any hold upon the title of the Morehead properties, but, as they were all under the same control and instances of dealings between and among them have been disclosed, as in the

case of the transfer of the option and the exchange of shares of stock, the plaintiff charges, upon information and belief, that all of the stock of the New River Power Company, $200,000.00, was subscribed for either by the defendant or some dummy for or on behalf of it, or for or on behalf of A. B. Leach, only a portion of which has been paid for, and that there is now actually due the New River Power Company, on account of such subscriptions, a large, but unknown, amount of money.

In addition to this allegation of liability of the Virginian Power Company, on account of its unpaid subscription to capital stock, constituting an asset of the New River Power Company, there are others made upon information and belief, to the effect that the New River Power Company may have some real estate or interest in real estate and has money in hand or deposited for its credit or use, securities consisting of stocks, bonds, notes, or debts due it, or mortgages, personal property and equitable interests, which it keeps concealed or of which the title is held by others in trust for it; and that it has fraudulently and secretly disposed of real and personal property, by pretended sale, assignment, conveyance, gift, delivery or otherwise, to the defendants and others, with intent to hinder, delay and defraud its creditors, including the plaintiff.

The objection of multifariousness was made in due time, in fact, at the earliest opportunity, wherefore the question raised by it is unmixed with the element of waiver.

If, as is contended for the appellees, purely legal demands are set up by the bill along with equitable demands, their presence in it does not render it multifarious. What is said about them may be treated as surplusage. *Sprinkle* v. *Duty,* 54 W. Va. 559; *Wellsburg etc. R. Co.* v. *Panhandle Traction Co.,* 56 W. Va. 18; *Lewis* v. *Cregor,* 73 W. Va. 564; *Smith* v. *Patton,* 12 W. Va. 541; *Jones* v. *Reid,* 12 W. Va. 350; *Smith* v. *McLain,* 11 W. Va. 654.

The allegations respecting discovery and the prayer therefor are merely incidental to the relief sought by the bill,

which is not one for discovery only, or what is termed a pure bill of discovery. It is a bill for discovery and relief, of which equity has cognizance, as to the relief sought, by reason of the nature of the cause of action, not merely by reason of necessity for discovery. It is admitted that the alleged liability of the Virginian Power Company for unpaid subscriptions to stock of the New River Power Company, constituting an asset of the latter company, raises, in connection with other allegations, an equitable cause of action in favor of the plaintiff. One of the purposes of the bill is subjection of this. asset and others, the existence of which and possession and concealment of which by the Virginian Power Company and some of its codefendants, are alleged upon information and belief, to the payment of the debt. No special ground for entrance to a court of equity, for such relief, need be set up by allegation or otherwise. Impossibility of finding and subjecting such assets, without discovery does not in any way affect the nature of the cause of action, to which it is incident. *Zetelle* v. *Meyers et al.,* 19 Gratt. 62; *Rankin* v. *Bradford et al.,* 1 Leigh 163. Obviously, therefore, the allegations and prayer respecting discovery need not be regarded as the statement of a separate and distinct cause of action.

Equities are asserted against the Virginian Power Company, first, on the ground of assets of the New River Power Company in its hands, by reason of fraudulent transfers and conveyances, secret trusts and similar arrangements; and, secondly, by reason of its original liability for the debt. Only one debt or demand is claimed and it is asserted against the same defendant upon two equitable grounds. On the bill, two issues might arise and two lines of inquiry might be conducted. But, in each, the same parties would be involved, interested and affected. If they were so separate and distinct in respect of the evidence to be taken in the pursuit thereof, as to impose unreasonable burdens and expense and introduce confusion, the reason underlying the objection of multifariousness would apply. But, in this instance, they are not. If the second ground of liability is well conceived in

law and sufficiently stated, proof of the first will tend very strongly to sustain the second, in point of evidence. In other words, if liability in equity can be fixed upon the Virginian Power Company, by reason of its having used the New River Power Company, and Dominion Power Company, as mere instrumentalities, in the execution of its purposes involving and including creation of this debt, proof of its fraudulent transactions with those companies and others, resulting in diversion of their assets into the hands of the parent corporation and leaving nothing for their creditors, would tend very strongly to establish the charge of such use; and it would be unnecessary to carry the evidence of the second ground of liability very far, if at all, beyond the scope of the first. It would be possible also, to treat the first as an integral part of the second, or as an incident thereof, if the second proposition is a tenable one. A bill could be so drawn as to make the second include the first as one of its component parts or as a mere fact constituting one of its pillars or bases. A gigantic scheme comprising all that has been done within the scope of the activities of the Virginian Power Company, as defined or indicated by the bill, contemplating the use of dummy corporations and secret trusts and arrangements, through and by means of which, used as hooks or fingers of that company, properties were to be obtained ostensibly for the dummies, but actually for itself, and finally taken into its possession and apparent ownership, without payment of consideration therefor, could be charged, and all of the assets of all of the dummies treated as the property and assets of the Virginian Power Company, held in such manner and under such color of right, some in one place or under one name, and some in and under others, as to necessitate resort to the equity form, for liberation and collection thereof, to answer the requirements of a decree against the real actor and debtor. The bill, as drawn, may be susceptible of such interpretation. Sufficient facts to constitute such a charge are disclosed and neither the form of statement nor the relation of the facts as verbally connected, might be conclusive. Sentences and paragraphs which, standing alone, might be

deemed to be assertions of specific causes of action, legal or equitable, might be found, when read with others, to be no more than mere narrations of facts deemed to be material in the statement of the complete and composite cause of action. What is said at this point is not to be taken nor regarded as determinative of the exact nature or limits of the cause of action set up in the bill. This inquiry goes only to the objection of multifariousness, and the purpose of the observations made concerning the cause of action and its two apparent grounds is demonstration of the very close relationship of the two possible inquiries, in respect of the evidence to be adduced upon them, and the obvious connection between the two grounds of liability. The rule against multifariousness, while in some respects technical, is governed largely, in its application, by considerations of convenience of the courts and parties and equity to the litigating parties, in the administration of justice. *Johnson* v. *Sanger,* 49 W. Va. 405; *Shafer* v. *O'Brien,* 31 W. Va. 601; *Oney* v. *Ferguson,* 41 W. Va. 568; *Arnold* v. *Arnold,* 11 W. Va. 455. Under our decisions, a substantial connection between the causes of action or the grounds of liability precludes objection on the ground of multifariousness, if the bill has one main purpose. In *Oney* v. *Ferguson,* 41 W. Va. 568, 570, this court, speaking through Judge BRANNON, said: ''A suit is not thrown out of court for this fault, except in a plain case. Now, this bill seeks one debt. The note represents it, and binds both the house and the assets in the executor's hands as a note only, as the bill claims, while the assignment affects the assets in Peebles' hands. They do not present two separate, distinct matters, because both note and assignment predicate a liability on both house and assets for the one debt to which they relate. The plaintiff presents the note as binding two subjects, house and assets; the assignment as binding the assets, if not the house also. Thus, they do not make multifariousness as presenting two distinct causes of suit. They are not distinct and independent.'' It was observed in *Johnson* v. *Sanger,* 49 W. Va. 405, 411, that the connection of the matters set up in the bill was not clear, and yet it was sustained, on

the ground of discretionary power in the court, as to application of the rule against multifariousness. Each of the two cases just mentioned came to this court in the status of this one. The bills had been dismissed on demurrer, on the ground of mulitfariousness. Hence, in neither of them, was there any element of waiver or ground laid for discretionary action by delay in the interposition of the objection. They are referred to and applied here, not as being directly in point, but, as having enunciated a rule or principle within which this cause falls. Here, one principal defendant is charged, on two or more grounds of liability, closely connected in fact and in the evidence necessary to establish them; wherefore the objection of multifariousness, in so far as it stands upon alleged misjoinder of causes of action between the same parties, is not well taken.

If either of the two grounds of liability in equity is sufficiently pleaded and the other is not, the objection here set up must fall, because the application of the rule requiries the statement of two or more good and complete causes of action improperly joined. If one is good and the other bad, the latter is mere surplusage and may be disregarded.

In so far as it rests upon joinder of parties defendant, untenableness of the objection is equally clear. There is but one debt. There are direct and positive charges, upon information and belief, that all of the defendants are parties to the alleged fraudulent transfers, assignments, conveyances and secret trusts, and that all were actors in the transactions out of which the second ground of liability claimed is alleged to have arisen. If it can be said that the allegations are insufficient to show connection of one of them, with either of the two grounds of liability, for which reason he ought not to be held to answer, it would be ground of demurrer for him, not under the rule against multifariousness, but for want of equity against him, or lack of interest. No contention of that kind is found in the argument. Misjoinder of parties defendant is asserted, but only on the ground of multifariousness.

Lack of equity or insufficiency of statement of any cause of

action against any of the defendants is urged as a ground of demurrer. As to what is here termed the first ground of liability in equity, this charge is manifestly unfounded. The allegations are not insufficient because made upon information and belief, since, although so made, they are direct and positive. Story, Eq. Pl. sec. 241; *Lucas* v. *Oliver,* 34 Ala. 626; *Wells* v. *Bridgeport etc. Co.,* 30 Conn. 316; *Campbell* v. *Paris R. Co.,* 71 Ill. 611. As the nature, condition and location of the concealed assets are alleged to be unknown to the plaintiff, he has set up this ground of liability in the only way in which it could have been done, and in the manner in which it is permissible to assert it, under the circumstances disclosed. *Post & Co.* v. *Railroad Co.,* 144 Mass. 341; *Hoppock* v. *Railroad Co.,* 27 N. J. Eq. 286; *Orr* v. *Diaper,* 4 Ch. Div. 92.

Upon these principles and conclusions the decree could be reversed and the demurrer overruled, without further inquiry, but for the claim that the demurrers are specific as well as general. Ascertainment of one sufficiently stated ground of relief in a bill makes it good as against a general demurrer thereto, and the court is under no duty to inquire whether it contains other sufficient grounds. *City of Wheeling* v. *Ches. & Pot. Tel. Co.,* 82 W. Va. 208; *Trough* v. *Trough,* 59 W. Va. 464; *Miller* v. *Hare,* 43 W. Va. 647; *Shoe Co.* v. *Haught,* 41 W. Va. 275; *Gay* v. *Skeen,* 36 W. Va. 582.

The three corporations sued and one of the individual defendants filed separate demurrers, the substance of each of which, aside from the charges of multifariousness and misjoinder of parties, was that the demurrant filed his demurrer to the amended bill and specifically to each and every claim for relief set forth therein and that the "amended bill and each and every claim for relief set forth therein is not sufficient in law." A demurrer always goes to the bill as a whole or to some part of it. That each of these goes to the entire bill is clear. Whether it goes also to any particular part of it, as contradistinguished from the whole, as in the case of a demurrer to a count of a declaration, is the inquiry we now have. It does not. A count in a declaration is a definite and clearly distinguishable part thereof, known by

its name or number, wherefore a demurrer to it by reference is as certain and definite, as if it were quoted in it. Ordinarily, a part of a bill cannot be so referred to, and a demurrer to a part of a bill must be certain and definite. It must point out with certainty the part demurred to. It should point out specifically by paragraph, page or folio, or other matter of reference, the part of the bill to which it is intended to apply. 6 Ency. Pl. & Pr. 421, 422; *Atwill* v. *Ferrett,* 2 Blachf. (U. S.) 39; *Jarvis* v. *Palmer,* 11 Paige (N. Y.) 650; *Chicago etc. R. Co.* v. *Macomb,* 2 Fed. 20; *Brien* v. *Buttorff,* 2 Tenn. Ch'y 523; *Devonsher* v. *Newenham,* 2 Sch. & Lef. 199; *Weatherhead* v. *Blackburn,* 2 Ves. & B. 121; *Chetwynd* v. *Lindon,* 2 Ves. 450; *Fall* v. *Hafter,* 40 Miss. 606. In so far as these demurrers purport to go to separate grounds or parts of the bill, they are bad for indefiniteness. They really amount to nothing more than assignments of causes of general demurrer. It is not unusual to state in a demurrer a number of reasons for alleged insufficiency of the bill. To challenge the sufficiency of a bill as a whole and each claim for relief set up in it, is nothing more than a short and convenient mode of interposing a general demurrer and assigning causes thereof.

The one ground of relief we have found to have been sufficiently charged expressly and specifically extends to and includes all of the demurrants, wherefore no one of them is entitled to have the bill dismissed as to it or him.

As it is manifest, that the bill is sufficient, the decree will be reversed, the demurrers overruled and the cause remanded with leave to the plaintiff to file his second amended bill, if he shall be advised so to do.

*Reversed; Demurrers overruled; Remanded.*