L. B. CARROLL, *et al.*

*v.*

MARTHA FLANAGAN

(No. 10199)

Submitted January 10, 1951.   Decided January 30, 1951.

*A. G. Mathews, Robert R. McDougle,* and *Wm. Bruce Hoff,* for appellants.

*J. J. Yankiss, K. C. Moore,* and *Richard C. Moore,* for appellee.

RILEY, JUDGE:

This is a suit in equity, brought in the Circuit Court of Wood County by L. B. Carroll, Lilah Murdoch and Josephine Nelson, as the surviving heirs at law, next of kin, and distributees of Celia Gartlan, deceased, and as the devisees and legatees under the decedent's will, dated December 1, 1934, duly probated and recorded in the County Clerk's Office of Wood County on September 13, 1945, and L. B. Carroll, the executor of decedent's will, as plaintiffs, against Martha Flanagan, as defendant, wherein plaintiffs seek: (1) To set aside a certain deed of decedent to Martha Flanagan, dated November 9, 1944, on the grounds that grantor decedent lacked mental capacity to make the deed and further that the deed was procured by fraud, undue influence and coercion; (2) to require the defendant to yield the possession of the real estate purportedly conveyed by the deed so that the same may be sold and the proceeds of sale paid to the individual plaintiffs in accordance with decedent's will; (3) to require the defendant to account for and pay over the rents, issues and profits of the real estate during the period of defendant's wrongful usurpation of the possession thereof; (4) to require the defendant to disclose and account for personal property of the decedent alleged to have been wrongfully appropriated by defendant both before and after decedent's death and that defendant be required to deliver the same to the plaintiff executor; and, among other things, (5) to require defendant to deliver to plaintiff executor decedent's books, papers, and records so as to facilitate the execution of his duties in the administration of decedent's estate.

The circuit court sustained defendant's demurrer to plaintiffs' bill of complaint, and plaintiffs not desiring to amend, the court dismissed the bill. From the decree

sustaining the demurrer and dismissing the bill of complaint the plaintiffs prosecute this appeal.

The pertinent allegations in plaintiffs' bill of complaint stated narratively are as follows:

The decedent died on June 26, 1945, leaving the three individual plaintiffs, L. B. Carroll, Lilah Murdoch, and Josephine Nelson, a brother and two sisters who, so far as the instant pleadings are concerned, would be her only heirs at law and distributees if decedent had died intestate.

A list of life and annuity policies, and certain securities, together with a direction as to the management of the disposition of decedent's clothing, furniture and household effects, dated March 20, 1940, was attached to the will of December 1, 1934. In the will decedent disposed of all of her property, real and personal, to her "living brothers and sisters". In Item "A" of the will she provided for the payment of her debts; in Item "E" she directed that her personal and household goods be sold and the proceeds derived from the sale be divided equally among her "living brothers and sisters"; and in Item "F" she provided that the home in which she was living at the time of her death in the City of Parkersburg be sold and the proceeds thereof divided equally among her "living brothers and sisters", with the provision that the property was not to be kept or purchased by any member of decedent's family.

On or about November 27, 1944, there was admitted to record in the office of the Clerk of the County Court of Wood County a deed dated November 9, 1944, which recites a consideration of five dollars and other good and valuable considerations, all in hand paid, whereby the decedent, Celia Gartlan, purportedly conveyed to the defendant, Martha Flanagan, the decedent's home property on Juliana Street in the City of Parkersburg, subject to the reservation of a life estate in decedent.

On March 29, 1944, the decedent purportedly signed and

published a codicil to her will, which bears the signature of two attesting witnesses, and purports to revoke Item "E" of decedent's will, with reference to her furniture and household effects and provides that "in lieu thereof I give and devise all my household and kitchen furniture of every kind and character, including window shades, curtains, drapes and rugs, and all other such items now located in my home at 1041 Juliana Street, to Martha Flanagan"; and the purported codicil further provides that Item "F'" of decedent's will of December 1, 1934, relating to the sale of decedent's home in the City of Parkersburg and the distribution of the proceeds of sale to the individual plaintiffs, be revoked "as I have heretofore deeded the same to Martha Flanagan, who has been exceedingly kind and attentive to me through my long illness."

On April 20, 1943, the defendant, Martha Flanagan, a practical nurse, who is alleged in the bill of complaint to be "a woman of dominating mind and designing character, moved into the home of the said decedent * * *, as her paid and fully compensated attendant, and there remained, and took, maintained and held the custody and the actual, manual, physical possession of the person of the decedent, continuously thenceforward until the date of the death of said decedent, and during said period, by fraud, deception, duress, coercion and undue influence, obtained, maintained and held complete and absolute domination and control over the mind, will, person, affairs and property of the said decedent, to the complete and total exclusion of the use or exercise by the said decedent of her own free will and volition. During the whole of said period, from on or about April 20, 1943, to on or about June 26, 1945, the said decedent was of greatly advanced age, of weakened and impaired mind, memory and intellect, and was so weak in body, mind and will as to be wholly unable to resist the overpowering and dominating influence, mind and will of the said defendant, which was then and there directed to the achievement of the defendant's carefully designed and contrived scheme and plan

of wrongfully and unlawfully acquiring and appropriating to her own use the real and personal property of said decedent or as much thereof as possible."

The bill of complaint further alleges that "Before and after the death of said decedent, the defendant systematically and methodically looted the property and estate of said decedent, pursuant to the carefully designed and contrived scheme and plan hereinbefore alleged, and wrongfully and unlawfully took over and appropriated to her own use valuable items of personal property of said decedent, including money, stocks, bonds, jewelry, household furniture, personal effects and other things of value, claiming and pretending, through falsely, deceitfully and fraudulently, that the same were given, donated or presented to her by said decedent during her lifetime. The plaintiffs are not informed or advised as to the exact amount, kinds, nature and extent of the money, stocks, bonds, jewelry, household furniture, personal effects and other things of value so wrongfully taken over and appropriated to her own use by the said defendant."

In paragraph VIII of the bill of complaint it is alleged that, at the times of the purported deed and the purported codicil, "decedent was so weakened in body and mind, and her memory was so impaired, that she was incapable of making a valid codicil to her will or of making a valid transfer or conveyance of any of her real and personal property, and the mind and will of the said decedent was so under the unlawful and undue influence of the defendant and the defendant exercised, practiced and exerted such duress, coercion, fraud and physical and mental restraint upon and over the said decedent that all semblance of free agency and uncontrolled volition on the part of the said decedent in relation to the act, matters and things in this paragraph mentioned was completely destroyed and there was substituted therefor the mind, will and agency of the defendant so that the purported lawful acts of the said decedent were and are, actually and in truth and fact, the wrongful and unlawful acts of the defendant, done or

caused to be done by her pursuant to the carefully designed and contrived scheme and plan hereinbefore alleged, and as such, are void and of no effect."

At the same time decedent's will was probated on December 13, 1945, the Union Trust and Deposit Company, named in the will as co-executor with decedent's brother, L. B. Carroll, filed its written declination to act as such co-executor. Whereupon the plaintiff, L. B. Carroll, qualified as the sole executor of the will; and, the bill of complaint alleges, that as such executor and pending the full administration of decedent's estate, he is entitled to have the possession and control of the personal property which decedent owned and possessed at the time of her death and the property alleged to have been wrongfully appropriated by defendant to her own use.

On the day the will was admitted to probate, the purported codicil of March 29, 1945, was filed by the defendant; Martha Flanagan, acting by her attorney and offered for probate. Thereupon the individual plaintiffs who, as heretofore noted, are the beneficiaries named in the will, filed notice of contest of the purported codicil. In the order filing the notice of contest the county court, under the provisions of Code, 44-3-7, referred the matters arising on the contest to the Honorable James S. Wade, a commissioner of accounts.

Finally, the bill of complaint alleges that the County Court of Wood County, having exclusive original jurisdiction of the contest of the probate of the purported codicil, such contest has no place in this suit, though if the purported codicil is probated its probate will serve to render moot the question of the validity of the deed, in question in this suit, and the claim that the defendant holds personal property of decedent which she wrongfully appropriated.

To the bill of complaint, the defendant, Martha Flanagan, filed a demurrer in which she says "that the Bill of Complaint filed in said cause is not sufficient in law for the following reasons:" and then the defendant assigns

a number of distinct grounds of demurrer which, for convenience in the consideration of this case may be divided into four principal grounds: (1) the bill is multifarious because several matters are joined in the bill which are distinct and independent of each other; (2) L. B. Carroll, executor of the last will and testament of Celia Gartlan is misjoined with L. B. Carroll in his own right and his sisters Lilah Murdoch and Josephine Nelson; (3) the County Court of Wood County has sole jurisdiction to determine the probate of the purported codicil to decedent's will and therefore this suit is premature; and (4) the remaining grounds are to the effect that plaintiffs are not entitled to the relief prayed for because the bill of complaint, as to its allegations, is insufficient in equity, but in this regard the demurrant does not expressly or specifically refer to any particular part of the bill of complaint.

The demurrer which we now have under consideration was filed in conformity with Code, 56-4-36, which reads: "* * * The form of a demurrer shall be: The defendant (or plaintiff) says that the declaration (or other pleading) is not sufficient in law, for the following reason (or reasons): All demurrers in civil cases shall be in writing and shall state specifically the grounds of demurrer relied on, and no grounds shall be considered other than those so stated, except by the court of its own accord, but the demurrant may, by leave of the court, amend his demurrer by stating additional grounds, or otherwise, at any time before the trial at law or final hearing in equity."

The Revisers' Note to this section of the Code reads: "* * * In requiring assignment of grounds of demurrer, there is no intention of reviving special demurrers for defects of form, for in *Pyles* v. *Carney*, 85 W. Va. 159, 101 S. E. 174, the Court holds that a demurrer is none the less general because it assigns a number of distinct grounds." At the time the *Pyles* case was decided, the statute, (Barnes' Code, 1923, Chapter 125, Section 28; Acts of the Legislature, 1882, Chapter 71, Section 28), provided the following form for a demurrer: "The defendant (or

plaintiff) says that the declaration (or plea, etc.) is not (or is) sufficient in law." With the statute in that form, this Court in point 7, syllabus, *Cook* v. *Dorsey,* 38 W. Va. 196, 18 S. E. 468, 33 L. R. A. (NS) 734n, held: "Special demurrers are abolished by section 28, c. 125, Code [Acts Legislature 1882, chapter 71, section 28]." But, as suggested by Prof. Carlin, in his treatise, Functions of a Demurrer under the Revised Code, 41 W. Va. L.Q. 313, the conclusion that special demurrers have been abolished in West Virginia may be understood as expressing only a half truth, and "its acceptance as a whole truth has led to an entirely new concept as to the basis of differentiation between general and special demurrers."

The historical way in which demurrers came to be divided into general and special demurrers is found in the enactment of 27 Eliz., c. 5, in the year 1585 and 4 and 5 Anne, c. 16, enacted in 1705. The former statute, entitled "An act for furtherance of justice in case of demurrer and pleadings", provided "that from henceforth, after demurrer joined and entered in any action or suit in any court of record within this realm, the judges shall proceed and give judgment accordingly as the very right of the cause and matter in law shall appear unto them, without regarding any imperfection, defect or want of form in any writ, return, plaint, declaration or other pleading, process or course of proceeding whatsoever, except those only which the party demurring shall specially and particularly set down and express together with his demurrer." Thus, general and special demurrers came in use, the former to reach matters of substance and the latter directed to formal defects only. But as matters of substance in pleading are necessarily clothed with form, the imaginary line between the two forms of demurrer, attempted to be established by the British Parliament in the enactment of 27 Eliz., c. 5, was vague indeed and lawyers who practiced in England between the enactment of 27 Eliz. in 1585 and 4 and 5 Anne in 1705, succeeded, evidently with the aid of the courts, in having certain purely formal defects considered substantial and reach-

able by general demurrer. Because of the doubt which arose on the construction of the earlier statute 27 Eliz., 4 and 5 Anne, c. 16, bearing substantially the same title as 27 Eliz., specified with particularity a number of defects which, though before deemed substantial were cured by the statute of 4 and 5 Anne, c. 16, as follows: " (1) Immaterial traverse. See section 34, c. 125, p. 804, Code W. Va. (1891)'; section 32, c. 125. (2) Profert of deeds. See section 33, c. 125. (3) Omission of the words 'vi et armis'. See sections 9, 10, c. 125. (4) Omission of verification *per recordum* or of a *pro ut patet per recordum*. Section 29, c. 125, * * *." *Hays* v. *Heatherly,* 36 W. Va. 613, 619, 15 S. E. 223.

As suggested by Professor Carlin, the effect of 27 Eliz., c. 5, and 4 and 5 Anne, c. 16, was not to preclude objections to formal defects, but merely to provide that objections to formal defects could only be taken advantage of by a special demurrer. However, in this State the Legislature attempted to abolish or at least diminish the use of special demurrers when in Acts of the Legislature 1882, chapter 71, section 29, it undertook to abolish all objections to defects that are merely formal, with exception of defects to a plea in abatement and certain formal defects which are subject to a prescribed statutory method of objecting. Section 29 provides that "On a demurrer (unless it be to a plea in abatement) the court shall not regard any defect or imperfection in the declaration or pleadings, whether it has heretofore been deemed mispleading or insufficient pleading or not, unless there be omitted something so essential to the action or defense that judgment according to law and the very right of the cause can not be given." And then the statute provides that no demurrer shall be sustained because of the omission in any pleading of the words "this he is ready to verify", "this he is ready to verify by the record", or "as appears by the record".

In *Pyles* v. *Carney, supra,* the Court was dealing with a general demurrer, though in form it was a special de-

murrer because it assigned grounds. But with the enactment of the present Code, 1931, chapter 56, Article 4, section 36, it was provided that: "The form of a demurrer shall be: The defendant (or plaintiff) says that the declaration (or other pleading) is not sufficient in law, for the following reason (or reasons):" and further that: "All demurrers in civil cases shall be in writing and shall state specifically the grounds of demurrer relied on, and no grounds shall be considered other than those so stated, except by the court of its own accord, but the demurrant may, by leave of the court, amend his demurrer by stating additional grounds, or otherwise, at any time before the trial at law or final hearing in equity."

As suggested by Professor Carlin, this statute provides in all cases a special demurrer in form. Thus, there should be no difference between the situation which existed in the statutory and case law in this State, dealing with demurrers when *Pyles* v. *Carney, supra,* was decided and the assignment of grounds of demurrer was optional and the present situation in which, under Code, 56-4-36, the assigning of grounds is compulsory. So we think that the instant demurrer is nothing more or less than a general demurrer assigning grounds.

The distinction, however, between a general and a special demurrer, "in the common law sense, never existed in equity, so the form of the demurrer has ceased to be a matter of any consequence in the Virginias." 1 Barton's Chancery Practice (Third Edition), 318; 6 M. J., Demurrers, Section 4. The rationale underlying this postulate is that prior to the enactment of the Acts of the Legislature, 1882, chapter 71, section 29, and perhaps prior to the enactment of the statutes of Elizabeth and Anne, bills of equity were already subject to certain rules of pleading and practice which required the grounds of demurrer to be assigned in support of a demurrer to a bill in chancery. *Hays* v. *Heatherly, supra.* Of course, after the enactment of the Acts of the Legislature, 1882, chapter 71, section 28, providing for a form of demurrer without assignment of

grounds, it was sufficient on a demurrer to a bill in equity to comply with the statutory form, the assignment of grounds being optional, where the demurrer goes to the whole as distinguished from a part of the bill of complaint. 1 Barton's Chancery Practice (Third Edition), 318, note 15. Unlike a pleading in a common law action where a demurrer can conveniently be directed to a count and thereby the pleader may be informed as to the nature and extent of the demurrant's position taken on the pleading, a demurrer to a part of a bill of complaint must be certain and definite. The demurrant in his demurrer must point out specifically by paragraph, page or folio the part of the bill of complaint demurred to. *Morehead v. The New River Power Company,* 91 W. Va. 277, point 7 syllabus, 112 S. E. 571. The instant demurrer being general, and not pointing out specifically any part of the bill to which the demurrer is directed, the demurrer challenges the sufficiency of the bill as a whole. It "does not call for adjudication as to the sufficiency of each one of the several parts, and if one ground be good, the general demurrer is properly overruled." *Round Bottom Coal & Coke Company v. Ben Franklin Coal Company of West Virginia,* 88 W. Va. 259, point 2 syllabus, 106 S. E. 716. See also, *Morehead v. The New River Power Company, supra,* point 5 syllabus.

Addressing ourselves again to the instant bill of complaint, in the light of the foregoing discussion, we are of the opinion that the bill sufficiently alleges that the decedent's deed to defendant, Martha Flanagan, dated November 9, 1944, sought to be set aside in this suit, was executed by the decedent, Celia Gartlan, as a result of undue influence exerted on the mind of decedent and that the bill sufficiently alleges that at the time of the execution of the deed decedent's mind was so impaired with the infirmities of advanced age and weakened physical condition that the deed, if the allegations of the bill of complaint be taken as true, was not in fact decedent's act and deed; and therefore the allegations of the bill of complaint in this regard are a basis for a part of the

equitable relief sought under the prayer of the bill of complaint. Moreover, the bill of complaint contains sufficient allegations as to a discovery and accounting for the personal property belonging to decedent alleged to have been misappropriated by the defendant, Martha Flanagan, that on this basis the bill of complaint warrants equitable relief. The demurrer, being general, under the holding of this Court in the *Morehead* and *Round Bottom Coal & Coke Company* cases, heretofore cited, should be overruled and the trial chancellor erred, in our opinion, in sustaining the demurrer.

While we think that the foregoing disposes of the case before us, attention perhaps should be given to the first and second grounds of the defendant's demurrer. In the first ground the defendant asserts that the bill of complaint is multifarious because several matters are joined in the bill, "which are entirely distinct and independent of each other and, constitute different, distinct and independent causes of actions or suits." With this position we do not agree because the claims asserted in the bill of complaint are not conflicting and all have the same basis, namely, the alleged inequitable conduct of the defendant, Martha Flanagan, in her dealing, to her own advantage, with the decedent, Celia Gartlan. In this jurisdiction a demurrer on the ground of multifarious is not favored and will not be sustained "where convenience and the administration of justice will be furthered by disregarding the objection [of multifariousness,] * * *." *Johnson* v. *Sanger*, 49 W. Va. 405, 38 S. E. 645; *Lilly* v. *Bowling*, 120 W. Va. 169, 197 S. E. 299; 1 Miller's Hogg's Equity Procedure (Third Edition) §333.

In the second ground of demurrer, the defendant asserts that it was improper to join the plaintiff L. B. Carroll, executor of the last will and testament of Celia Gartlan with the individual plaintiffs. Here all the plaintiffs seek in this suit to achieve a common object, namely, to require the defendant to account for personal property alleged to have been misappropriated, to obtain a dis-

covery as to the same and to set aside the allegedly invalid deed. Clearly it was the duty of the executor, having been duly qualified to seek to retrieve and take into his possession all personal property which may have been appropriated by the defendant and which rightly belonged to the decedent's estate. And the individual plaintiffs, being the devisees and legatees under the will of decedent had a right where as here there is a proper basis of equitable relief to resort to a court of equity to protect their rights. "Where a party has the right to bring a suit in equity and accordingly brings such suit, the joinder of an improper party therein having no interest in the same, will not affect the right of the real party in interest to maintain the suit. Where the plaintiffs have a joint interest, or where they seek a common object by means of a suit, though they are not united in interest with each other, there is no misjoinder of parties." 1 Miller's Hogg's Equity Procedure (Third Edition) Sec. 96.

As the decedent's will directs and empowers the executor to sell the real estate conveyed in the allegedly invalid deed, the executor is a proper party to prosecute a suit to set the conveyance aside. In *White* v. *Bailey,* 65 W. Va. 573, point six, syllabus, 64 S. E. 1019, this Court held: "The executor of the will of a deceased person may prosecute a suit to set aside, for failure of consideration, a deed conveying away land he is authorized by the will to sell." See also *Lynch* v. *Spicer,* 53 W. Va. 426, point 2, syllabus, 44 S. E. 255. Because the testamentary direction to the executor to sell decedent's home place and distribute the proceeds to the decedent's living brothers and sisters effected an equitable conversion of the property from real estate to personal property, the distributees, that is those entitled to the personal property, may maintain a bill in equity to impeach the deed; "* * * but the subject itself can only be decreed to the personal representative of the decedent, or to the distributees when the representative is a party to the suit." 1 Miller's Hogg's Equity Procedure, (Third Edition), Sec. 75; *Hansford* v. *Elliott,* 9 Leigh 36 Va. 79.

We, therefore, are of opinion that the trial court, having erroneously sustained the defendant's demurrer to plaintiffs' bill of complaint and dismissed the bill, its decree should be reversed and the demurrer overruled, and the plaintiffs' bill of complaint reinstated.

> *Decree reversed; demurrer overruled; bill of complaint reinstated.*